*Middlesex,*
July,
1826.

Ashley
*v.*
Hill.

—◦◦◦—

## DAVIS *against* LYMAN and another:

### IN ERROR.

6 | 249
73 | 245

*A.* conveyed land to *B.* in fee simple, and covenanted in the deed, that " he had done no act or thing, whereby to affect, change or alter his title to the premises; and that they were clear of all mortgages, judgments or liens of any nature or kind whatsoever; or that for any thing done by the grantor, or any person claiming under him, he would warrant and defend the grantee, his heirs and assigns forever." Afterwards, *B.* conveyed the premises in fee simple to *C.*; and *C.* discharged *A.* from the covenants in his deed to *B.*, and from all damages in consequence of the breach of such covenants, or either of them. Previous to the delivery of the deed from *A.* to *B.*, *A.* had mortgaged the land to *D.* to secure a debt, which still remained due. In an action brought by *B.* against *A.* on his covenant, assigning this incumbrance as a breach, it was held, 1. That there was a breach, on the delivery of the deed, whereby *B.* had a perfect right of action; 2. That neither the covenant, nor any right of action for the breach thereof, passed by the deed to *C.*; and consequently, 3. That the discharge given by *C.* to *A.*, was no bar to the plaintiff's claim.

This was an action upon a covenant in a deed, executed by the defendants, conveying to the plaintiff a piece of land. The declaration consisted of two counts. In the first, the plaintiff averred, That on the 21st of *October*, 1815, the defendants granted to the plaintiff, by deed, in certain described land an estate in fee simple, and therein covenanted, that they had done no act or thing, whereby to affect, change, or alter their

title to the premises ; and that they were clear of all mortgages, judgments or liens of the defendants, of any nature or kind whatsoever. By way of breach, the plaintiff alleged, that at the date and delivery of the deed, the premises were not unincumbered ; for that, on the 25th of *July*, 1810, by deed of that date, *James Gale*, one of the defendants, and one *Ashbel Stanley*, mortgaged the premises to *John Sudam*, to secure the payment of 2250 dollars, of which sum, 1500 dollars remained due.

The second count was like the first, except that the covenant was thus stated : That in said deed, the defendants, among other things, covenanted jointly with the plaintiff, that before the execution and delivery thereof, they had done no act or thing, whereby to affect, change or alter their title to the premises.

*Justin Lyman*, one of the defendants, having prayed oyer of the deed before-mentioned, recited it, and the following are the expressions of the covenant, on which the plaintiff has founded his action : " That they, the parties of the first part, have done no act or thing, whereby to affect, change or alter their title to the said premises ; and that they are clear of all mortgages, judgments or liens of the said party of the first part of any nature or kind whatsoever ; or that for any thing done by the said parties of the first part, or any person claiming under them, they the said parties of the first part will warrant and defend the said party of the second part, their heirs and assigns forever." The defendant *Lyman* then pleaded *non est factum*, and for further plea to the first count in bar of the action, he averred, that after the execution and delivery of the above-mentioned deed to the plaintiff, to wit, on the 17th of *March*, 1816, and before the commencement of the plaintiff's suit, the plaintiff, by deed, executed and delivered to one *Justus Blanchard*, conveyed the premises to him in fee simple ; and that on the 2d day of *November*, 1821, *Blanchard*, by a deed of release delivered to the said *Lyman*, discharged him from all the covenants and agreements contained in the deed mentioned in the plaintiff's declaration ; and from all damages in consequence of the breach of the said covenants or agreements therein, or either of them.

A third plea put in to the first count, was substantially to the same effect, except that it contained an averment, that the deed from *Davis* to *Blanchard* was a mortgage deed, to secure the payment of 300 dollars.

To the second count in the declaration there were similar pleas.

On the plea of *non est factum* issue was joined; and all the other pleas were demurred to. The court adjudged the pleas to be sufficient. On motion of the plaintiff, under the late statute, the case was brought before this Court for revision.

*Sherman*, for the plaintiff, contended, 1. That the covenant on which the action was founded, was a covenant against incumbrances existing at the delivery of the deed.(*a*)

2. That this covenant was *personal* with the covenantee, and was broken the moment the deed was delivered.

3 That it was, therefore, not assignable, and did not pass by the deed to *Blanchard*.

4. That, as a necessary consequence, the right of action remained in the plaintiff, and *Blanchard* could not discharge it.

*T. S. Williams*, for the defendant, insisted, 1. That the writing in question was merely a covenant of *special warranty*, forming one common assurance of property, and passing with the land, like a covenant for quiet enjoyment. This is the apparent object and intent of the parties, as collected from the whole deed ; and such a construction ought to be given as will best satisfy this object and intent. *Reniger* v. *Fogossa*, 1 *Plowd*. 18. Earl of *Clanrickard's* case, *Hob.* 275. *Broughton* v. *Conway*, *Moore* 58. *Gale* & al v. *Reed*, 8 *East* 89. *Browning* v. *Wright* & al. 2 *Bos. & Pull.* 13. *Whallon* v. *Kauffman*, 19 *Johns. Rep.* 97. 103.

2. That at any rate, this was a continuing covenant ; the ultimate damage being to heirs, who, in contradistinction to the executor, must bring the suit. *Kingdon* v. *Nottle*, 4 *Mau. & Selw.* 55. *King* v. *Jones & al.* 5 *Taun.* 418. S. C. 1 *Marsh.* 107. *Sprague* v. *Baker*, 17 *Mass. Rep.* 586.

3. That if the covenants were *distinct*, they were for the same object ; and a recovery in one must bar the other ; and a satisfaction of one must have the same effect. *Middlemore* v. *Goodale, Cro. Car.* 503.

(*a*) The Reporter understood the counsel to claim, that the latter clause of the writing set forth in the plea, was a *distinct* covenant from that on which the suit was brought ; and admitting it to run with the land, it would not affect any question in the present case.

Hosmer, Ch J. The plaintiff having founded his action on a covenant, its construction first claims attention.

Covenants are to be construed according to their spirit and intent. *Quackenboss* v. *Lansing*, 6 *Johns. Rep.* 49. *Campbell* v. *Jones*, 6 *Term Rep.* 570. *Porter* v. *Shepard*, 6 *Term Rep.* 668. *Morton* v *Lamb*, 7 *Term Rep.* 125. 1 *Wms. Saund.* 320. n. The law has appropriated no particular form of expression to their creation; and any words are sufficient. which show the intention of the parties. 4 *Cruise's Dig.* 447. They are not, of course, to be interpreted by the letter of them; but from a survey of every part, their true object is to be ascertained, and their sense rendered uniform and consistent throughout. *Gale* & al. v. *Read*, 8 *East*, 78. This is agreeable to the rule laid down in *Plowd.* 18. that, "the scope and end of every matter is principally to be considered;" and to the observations of Lord *Hobart*, in Earl of *Clanricard* & ux. v. *Sidney*, *Hob.* 275. that "the law being the judge of an act, deed or bargain, consisting of divers parts, containing the will and intent of the parties, all tending to one end, doth judge of the whole, and gives every part his office to make up that intent, and doth not break the words in pieces." Hence, the words of a covenant are narrowed or extended, by the apparent object or intent. *Broughton* v. *Conway*, *Moore* 58. *Shep. Touch.* 169. *Browning* v. *Wright* & al., 2 *Bos.* & *Pul.* 13. 1 *Inst.* 381. While it is admitted, that the intention of the parties, derived from the whole of their contract, and not from a part of it, must govern, let it not be forgotten, as sometimes it is, that the words of their covenant, the symbols appointed by them to denote their intention, in their most known and usual signification, are generally the best and surest guide of the purpose they have in view.

The covenant, in this case, by giving a united and harmonious construction to all its expressions, will be found to be simple, unambiguous and free from perplexity. Its unnecessary length and unusual phraseology, as well as its grammatical incorrectness, may be ascribed to the unlettered mind of the draftsman. evidently unacquainted with technical language, and absurdly believing that an assertion of the same thing over and over again, conduced to perspicuity. When distinctly analysed, the construction of the covenant is free from all difficulty. It begins, by asserting, " that they, the said parties of the first part, have done no act to affect, change or alter their title to the said premises, and that they are clear of all mortgages.

*Middlesex,*
July,
1826.

Davis
*v.*
Lyman.

judgments or liens of the said party of the first part, of any nature or kind whatsoever." The meaning of this expression is perfectly clear and intelligible. The covenantors assert, that no act has been done by them, to impair their title or incumber the land ; and that no lien created by them, or arising from any judgment against them exists upon it. The residue of the covenant is in these words : " or that for any thing done by the parties of the first part, or any persons claiming under them, that the said parties of the first part will warrant and defend the said party of the second party, their heirs and assigns forever." This expression continues in the spirit of the former part of the covenant, and adds nothing to its meaning, except that it embraces the acts done by any person claiming under them, with an explicit agreement to warrant and defend the plaintiff. The profusion of inartificial language before recited, being a reduplication of the same thought, when reduced to its simple meaning, and expressed in technical language, is comprised in this single expression ; that the premises are free and clear from all incumbrances, created by the covenants, or any person claiming under them, or arising from any judgment obtained ; and that they will warrant and defend the covenantee and his assigns against all such incumbrances. The object of the parties, derived from a consistent and harmonious construction of the whole covenant, and every part of it, was merely this ; that the defendant's title, such as it was when acquired by them, without alteration or lien upon it, should be transferred. The agreement to warrant and defend, requires no comment. The words must be construed according to their subject matter ; and if the covenant is real, and runs with the land, then for every breach of it *after alienation*, the assignee may sustain his suit. But if the covenant is personal with the covenantee, and does not run with the land, the agreement to warrant and defend is personal to him likewise.

It must be constantly borne in mind, that there is no covenant in relation to any *future* act. All the covenants are retrospective, and relate to acts existing anterior to the execution and delivery of the defendants' deed. They speak of existing liens, and of existing judgments, and of acts done by the covenantors, or by any person claiming under them ; but in no instance of any act or event, to be done or happen in future. There was no covenant warranting the title, or the quiet enjoyment of it ; but the covenants solely respected incumbrances :

*Middlesex,*
July,
1826.

Davis
*v.*
Lyman.

and these could not be created, nor indeed could the title be conveyed, by the covenantors, subsequent to the delivery of their deed.

The construction of the convenant having been established, it will present the subject more distinctly before the mind, first, to consider the plaintiff's title, or right of action; and this will be best effected, by treating it as if he had never alienated the land to *Blanchard*, but was still the owner of it. When this has been done, the legal effect of the alienation to *Blanchard*, on the plaintiff's right of action, will properly come into view; that the value of the release relied on in the defendants' plea, may be duly estimated.

First, then, as to the plaintiff's title or right of action, considered independently of his alienation to *Blanchard*.

The deed of the defendants to the plaintiff, was delivered on the 21st day of *October*, 1815. By the covenant contained in it, it was stipulated, that the land was free from incumbrances created by the defendants; and the whole argument has taken for granted and admitted, that an incumbrance originating by the act of either, was a breach of this engagement. More than five years anterior to the covenant, *James Gale*, one of the defendants, mortgaged the premises to *John Sudam ;* and the lien created by the mortgage, existed at the delivery of the defendants' deed. From these facts it results unquestionably, that the above covenant was broken at the moment the defendants' deed was delivered; for if it were not so, the covenant could never be broken. It stipulated, that certain facts existed at that time; that there was no lien of the defendants' creation; and by necessary consequence, the stipulation being untrue, the covenant was violated. The point was settled by this Court, in *Mitchell* v. *Warner*, 5 *Conn. Rep.* 497. in conformity with established principle and numerous decisions. *Beckford* v. *Page*, 2 *Mass. Rep.* 455. *Sprague* v. *Baker*, 17 *Mass. Rep.* 386. *Wyman* v. *Ballard*, 12 *Mass. Rep.* 304. *Greensby* & al. v. *Wilcox*, 2 *Johns. Rep.* 1. *Hamilton* v. *Wilson*, 4 *Johns. Rep.* 72. *Abbot* v. *Allen* & al., 14 *Johns. Rep.* 248. *Shep. Touch.* 170.

In this, as in all other cases, the law implies damage, on the violation of the contract. If, when the plaintiff sues on his covenant, he has extinguished the incumbrance, he is entitled to recover the price he has paid for it; but if it is outstanding, his damages are only nominal. This is the rule, as laid down by the supreme court of *Massachusetts*, in *Prescott* v. *Trueman*

4 *Mass. Rep.* 627., and by the supreme court in the state of *New-York*, in *Delavergne* v. *Norris*, 7 *Johns. Rep.* 358., and in *Stannard* v. *Eldredge*, 16 *Johns. Rep.* 254. The rule is perfectly reasonable. The mortgagee, for example, may resort to the mortgagor, on his personal obligation, and compel payment; and if the inconvenience of the incumbrance is felt by the purchaser, he may satisfy it, and include the sum paid in the damages for the breach of his covenant.

It appears indisputably, that several months before the delivery of the plaintiff's deed to *Blanchard*, the defendants' covenant, on which the suit is founded, was made and broken; and of consequence, the plaintiff had a perfect right of action against them, upon their covenant. And this right of action yet remains, unless it was transferred, by the plaintiff's deed of the premises to *Blanchard.*

The enquiry, of course, arises, as to the legal effect of the alienation to *Blanchard*, on the plaintiff's right of action. It devolves on the defendants to show, that the covenant in question, and the breach of it, were both transferred to *Blanchard*, by the plaintiff's deed of the premises; otherwise, they remain in the plaintiff, and his right of suit is unimpaired. They must establish the position, that the cause of action was assigned; for nothing has happened since to vary it, in the slightest degree. The covenant was entirely and radically broken; and no fact has since taken place, to add to the breach; nor indeed, was it possible. The incumbrance now remains unextinguished, and equally unpaid, as it was, at the delivery of the defendants' deed to the plaintiff.

I am perfectly clear, that the defendants' covenant, and the breach of it, were not, nor was either of them, transferred to *Blanchard.* It was not done directly and explicitly; nor does the law declare that such was the effect of the plaintiff's alienation. On the contrary, it is unquestionably certain, that an assignment of the covenant, or of the breach of it, did not take place, as it was not authorized by law, but was opposed to its clearest prohibition.

Covenants real alone pass by deed to the grantee; but covenants personal do not. What, then, is the nature of a real covenant, and by what feature is it distinguishable? A covenant real has for its object, something annexed to, or inherent in, or connected with, land or other real property; (1 *Inst.* 384. *b.* 4 *Criuse's Dig.* 452.) and runs with the land, so that the grantee

of the land is invested with it, and may sue upon it, for any breach happening in his time. Such covenants have the distinguishing characteristic of containing stipulations against *future* acts, and are alone capable of violation, *subsequent* to the delivery of the deed containing them. This quality it is, that annexes them to the title, in whatever hands it may be, and renders them assignable. Hence, covenants of warranty and for quiet enjoyment, which alone can be broken by a future eviction, and covenants for future assurance, are real covenants; while covenants that the grantor is well seised, that he has good right to convey, that the premises are unincumbered, and others in the present tense, are personal covenants, and not annexed to and running with the title. From the nature of the acts covenanted for, they are broken at the delivery of the deed containing them, and are incapable of future violation. *Vide* the cases before cited. *Sprague* v. *Baker,* 17 *Mass. Rep.* 586.

By their breach, they immediately become *choses in action,* and legally incapable of assignment. *Lewis* v. *Ridge, Cro. Eliz.* 863. *Lucy* v. *Levington,* 2 *Lev.* 26 *Com Dig. tit.* Covenant. B. 3. *Greensby* v. *Wilcox,* 2 *Johns. Rep.* 1. *Hamilton* v. *Wilson,* 4 *Johns. Rep.* 72. *Abbot* v. *Allen,* 14 *Johns. Rep.* 248. *Shep. Touch.* 170. *Beckford* v. *Page,* 2 *Mass. Rep.* 455. *Sprague* v. *Baker,* 17 *Mass. Rep.* 586. *Wyman* v. *Ballard,* 12 *Mass. Rep.* 304. And even in respect of a real covenant, it must be assigned before it is broken, as the breach renders it a *chose in action,* and therefore, unavailing, so far as it respects the act constituting the breach. *Lewis* v. *Ridge, Cro. Eliz.* 863 *Lucy* v. *Levington,* 2 *Lev.* 26. *Com. Dig. tit.* Covenant. B. 3., and the cases before cited.

The above principles are so trite and firmly established, that the arguments for the defendants in this case, alone justify a formal recurrence to them. They were all recognized and acted on, in the before-mentioned case of *Mitchell* v. *Warner;* nor were they ever questioned, in any particular, even by implication, until by the recent determinations in *Kingdon* v. *Nottle,* 4 *Maule & Selw.* 55. Same parties in another case, 1 *Maule & Selw.* 357.

In the aforesaid case of *Mitchell* v. *Warner,* the determinations in *Kingdon* v. *Nottle,* were overruled, by the unanimous decision of this Court, and declared not to be law. They were considered as being directly opposed to the established law of *Westminster-Hall;* to the numerous determinations of the

highest courts in our sister states; and under the supposed ma-
gic of certain words, in effect to authorise the assignment of a
*chose in action* by devise.     The particular reasons will be found
in the case alluded to.

*Hamilton* & al. v. *Wilson,* 4 *Johns. Rep.* 72. decided in the
supreme court of *New-York*, was an action on the covenant of
*seisin* in a deed, brought by the *heirs* of the grantee against the
grantor; and the breach assigned was, that the defendant, at
the delivery of the deed, was *not seised.*   On a motion in arrest
of judgment, it was held, that the covenant was broken as soon
as it was made, and the grantee had an immediate and perfect
right of action in his life-time, which, on his death, went to his
personal representatives, and did not descend to his heirs, who
could not, therefore, maintain the action.

The case of *King* v. *Jones & Rowland,* 5 *Taun.* 417., has so
little bearing on the one under discussion, that I shall notice it
very briefly, to show, that it was not forgotten.   It was an ac-
tion by the heir of the vendee, who was evicted; and upon a
covenant for further assurance; and the court admitted proof
of a request for conveyance by the ancestor, and a refusal made
to him.   The covenant was real, and run with the land; the
eviction, the only actual damage, was of the heir who brought
the suit; and the refusal in the ancestor's time, perhaps, might
not improperly be considered as a declared and existing pur-
pose.

In the case before us, the covenant is personal, and does not
vest in the alienee; it was broken before the conveyance to
*Blanchard*; and no act has taken place, whereby any special
damage has occurred to him.

In *Sprague* v. *Baker,* 17 *Mass. Rep.* 586., an opinion was
thrown out, that an action on the covenant against incumbran-
ces was sustainable by the assignee, on being evicted, or obliged
to pay the sum with which the land was incumbered; but the
subject was waived, and the case was decided on a different
point.   The question was not, for this reason, much discussed;
and the inclination of mind suggested, (for it ought thus to be
called) was founded on the principle cited from *Comyns*, that
covenant lies by the assignee, on every covenant which concerns
the land. *Com. Dig. tit.* Covenant. B. 3. *Mascal's* case, *Moore*
242.   By way of illustration, the author instances covenants for
the payment of rent, and not to do waste, and refers to the ti-
tle concerning conditions.

From this it is apparent, that the covenants referred to were *real* covenants, annexed to the land and running with it; for such are the covenants to repair and not to commit waste. They are engagements for *future* acts, and not like a covenant against incumbrances, broken so soon as made, irreparably and wholly.

But the case, for another reason, has no relevancy. The assignee *paid the incumbrance*; while, in the case before us, no payment was made; and it never has been suggested, I believe, until now, that the law implies a breach of covenant in the assignee, and gives him nominal damages.

I am, therefore, brought to this conclusion; that the plaintiff, at the date and delivery of the defendants' deed to him, had a perfect, complete and indivisible right of action; that it was not assignable, or assigned, to *Blanchard;* and that, therefore, his release to the defendant, *Lyman,* was nugatory, and had nothing to operate upon.

On recurrence to the case of *Mitchell* v. *Warner,* 5 *Conn. Rep.* 497. determined by this court, it will appear, that all the questions in this case, after two arguments, and much deliberation, were explicitly decided.

If it be said, that actual damage may be sustained, by the alienee, by reason of incumbrances on the land granted, and the question is proposed, how shall he, in such case, obtain his recompense? I reply, on the covenants of his immediate grantor; and this is his only resource.

The defendants' plea is insufficient; and the determination supporting it must be reversed.

PETERS and BRAINARD, Js. were of the same opinion.

LANMAN and DAGGETT, Js. dissented.

Judgment reversed.