JOHN M. JOHNSON AND GARDINER GREENE, JR., TRUST-
EES, vs. JOHN D. EDMOND, 2D, ET AL.

Second Judicial District, Norwich, October Term, 1894. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A testator gave one half of the residue of his estate to his daughter M for life, and upon her decease "to her children and the legal representa- tives of any of them who may then have deceased, and to their heirs forever"; and the other half to his daughter J for life, and at her decease "to her children and the descendants of any child of hers, who may then have deceased and to their heirs forever," but if she had no child or other descendant surviving her, then one third to her husband for life and the other two thirds "to the children of M and the legal representatives of such of them as may then be dead, and their heirs forever"; and upon the death of the husband of J, the portion given to him for life was also to go "to the children of M, and the legal representatives of such of them as may then be deceased, and to their heirs forever." At the time of making the will M had two children living. J afterward died, leaving no descendants. In a suit to deter- mine the construction and validity of the will it was held :—

1. That the term "legal representatives" as used in the will meant the executors and administrators, and was a term of limitation and not of purchase.

2. That the children of M as a class took a vested remainder in fee in the first named one half; and a vested interest by way of contingent remainder in the second named one half, which became absolutely vested on the death of J, subject to the life interest of her husband.

3. That the bequests to the children of *M* did not violate the statute against perpetuities, § 2952 of the General Statutes. (One judge dissenting.)

[Argued October 16th, 1894—decided February 8th, 1895.]

SUIT to determine the validity and construction of the will of Russell Hubbard, late of Norwich, deceased; brought to the Superior Court in New London County, and reserved by the court, *F. B. Hall, J.,* upon the facts stated in the complaint, for the advice of this court. The case is sufficiently stated in the opinion.

*W. A. Briscoe,* for the plaintiffs.

*Jeremiah Halsey* and *Frank T. Brown,* for John D. Edmond, 2d, and Mary H. and Lewis Dugal.

*William B. Anderson,* of New York, for Helen H. White and Juliet B. Appleton.

*W. S. Allis,* for Andrew S. Webster.

*George A. Blaney,* of Boston, for Aaron D. Webber.

*John T. Wait,* for Hugh H. Osgood *et al.*

TORRANCE, J. This suit is brought to obtain a judicial construction of the will of Russell Hubbard, and comes to this court by way of reservation. The questions in the case arise upon the eighth clause of the will which reads as follows:—

" All the rest and residue of my estate of all kinds which I shall own at the time of my decease I give and bequeath and devise as follows, viz: to my daughter, Mrs. Mary H. Bull, one half thereof for and during her natural life, the net income, rents, and profits thereof, after deducting the current charges and expenses, to be paid over to her as collected by my executors, and upon her decease I give and bequeath and devise the estate so given to her for life to her

children, and the legal representatives of any of them who may then have deceased, and to their heirs forever.

"And I give and bequeath and devise the other half of said residuum of my estate to my daughter, Mrs. Juliet H. Spalding, for and during her natural life, the net income, rents and profits thereof, after deducting charges and expenses, to be paid to her as collected, and upon the decease of my said daughter Juliet I give, bequeath and devise the estate so given to her for life to her children and the descendants of any child of hers, who may then have deceased, and to their heirs forever, but if she have no child or other descendant of hers surviving her, then one third the estate so given to her for life shall go to her husband, Charles Spalding, for life, the net income, rents and profits thereof to be paid to him by my executors. And the other two thirds parts thereof to the children of my said daughter Mary and the legal representatives of such of them as may then be dead, and their heirs forever, and upon the decease of the said Charles Spalding, the portion of my estate so given to him for life I give, bequeath and devise to said children of my daughter Mary, and the legal representatives of such of them as may then be deceased, and to their heirs forever."

These questions are thus stated in the complaint: "Whether the limitation over, upon the decease of the testator's daughters, to the children of Mary H. Bull, and the legal representatives of any of them, who may then have deceased, and their heirs forever, is void as offending against the statute against perpetuities and the estate therein attempted to be disposed of intestate estate. If said provision be valid, what is the meaning of the expression 'legal representatives,' wherever the same is used in said section?"

The will was made in 1854, and the testator died in 1857. At the time the will was made he had a wife, and only two children—the daughters Mary and Juliet named in the will, the former a widow and the latter the wife of Mr. Spalding —and two unmarried granddaughters named Juliet and Helen, children of his daughter Mary; and this condition

of the testator's family remained the same up to the time of his death. His wife died in 1863.

After his death, his daughter Mary married Mr. Webber, but had no children by this second marriage, and she died in January, 1894, leaving her husband who is a party to this suit. Mrs. Spalding, the other daughter, never had any children; she died in 1865, and her husband died in 1885. The granddaughter Juliet ultimately married Mr. Edmond, and she died in 1878, leaving her husband and three children surviving her. The husband has died since the commencement of this proceeding and the children, together with their children, are all parties in the case. The other granddaughter, Helen, married Mr. Webster, and died in 1864, leaving her husband who is a party to this suit, and a daughter who with her husband and children are also parties. The daughters of the testator, Mary and Juliet, left wills, which have been duly admitted to probate, in which the bulk of their property is given to their husbands; and the executor of Mary, and the executor of Charles Spalding, claiming under the wills of Mary and Juliet respectively, are also parties to this proceeding.

These executors claim that the devises over, in the eighth clause of the will, after the life estates to the daughters of the testators, are void, and that consequently the daughters took the entire residue of their father's estate as his heirs at law; while the children and grandchildren of Mrs. Edmond and of Mrs. Webster claim that these dispositions over are valid. Which, if either, of these claims is correct, will depend upon the construction of this eighth clause of the will.

The intention of the testator is to govern if it can be ascertained, and is conformable to law; and of course it is the intention expressed and made manifest in the words used; which words may, if necessary, be read in the light of the facts and circumstances relating to the condition of the testator's family, and the like, under which they were written.

The only immediate objects of the testator's bounty, when the will was made, were his wife, his two daughters and his

two living fatherless granddaughters. He would naturally be more solicitous to provide for his grandchildren than for more remote descendants, because the former were nearer to him in blood, and two of them were then living and known to him ; and it is evident from the sixth clause of the will that he had these two living grandchildren chiefly in mind when he made the will; for though the legacies therein given are in form perhaps to his grandchildren as a class, the language used shows he was mainly thinking of the two who then constituted the entire class. It is not at all difficult to discover the main general purpose of the testator in this will. He first makes ample provision for his wife ; then he gives such legacies as he deemed it proper to give ; and lastly he disposes of the residue in the eighth clause. His general plan and purpose in that clause is also clear. He intends to dispose of the entire residuum, so as to avoid intestacy as to any of it; to treat his two daughters exactly alike, for substantially the same provision is made for each; to give the daughters the life use of one half of the residuum, and to give them no more than that ; and lastly to give the entire residuum to his grandchildren, dividing it into two equal parts, one for the issue of each of his daughters, who might survive her.

At the date of his will one daughter only, Mrs. Bull, had issue. She was a widow and her two unmarried daughters must necessarily have occupied a prominent place in the testator's mind while shaping the provisions of his will. After giving, in the eighth article of that instrument, to Mrs. Bull half his residuary estate for her life, the net income to be paid over to her as collected by his executors, he proceeds thus : " upon her decease I give and bequeath and devise the estate so given to her for life to her children, and the legal representatives of any of them who may then have deceased, and to their heirs forever." He then makes a similar disposition of the other half of the residuum and its net income in favor of Mrs. Spalding, and adds : " upon the decease of my said daughter Juliet I give, bequeath and devise the estate so given to her for life to her children and

the descendants of any child of hers, who may then have deceased, and to their heirs forever, but if she have no child or other descendant of hers surviving her, then one third the estate so given to her for life shall go to her husband, Charles Spalding, for life, the net income, rents and profits thereof to be paid to him by my executors. And the other two thirds parts thereof to the children of my said daughter Mary and the legal representatives of such of them as may then be dead, and their heirs forever, and upon the decease of the said Charles Spalding, the portion of my estate so given to him for life I give, bequeath and devise to said children of my daughter Mary, and the legal representatives of such of them as may then be deceased, and to their heirs forever." The twelfth article of the will runs thus: "Should my said son-in-law, Charles Spalding, not survive his said wife Juliet, then upon the decease of the said Juliet, all the estate so given to her for life (provided she leave no child or descendant of hers surviving her), I give, bequeath and devise to the children of my said daughter Mary and the legal representatives of such of them as may then have deceased, and to their heirs forever."

It will be remarked that both in the eighth and twelfth articles, the reference to the issue of his daughters is differently phrased, with respect to each. In providing for Mrs. Bull's children, the gift is to them, upon her decease, "and the legal representatives of any of them who may then have deceased, and to their heirs forever." In providing for Mrs. Spalding's children (should any thereafter be born to her), the gift is to them "and the descendants of any child of hers, who may then have deceased, and to their heirs forever."

The term "legal representatives" is used in these two articles four times to prescribe the succession to the estate given to Mrs. Bull for life, and the terms "descendants," "child or other descendant," and "child or descendant," are with equal care used to prescribe the succession to the estate given to Mrs. Spalding. It is natural to conclude that the testator employed this differing phraseology, in the case of

each daughter, because he intended the succession in the line of each to be regulated in a different way. This effect can be given to his words only by regarding the term "legal representatives," as used to denote the executors or administrators of the estates of the children of Mrs. Bull. It is one of those ambiguous terms, the meaning of which can often be determined only by the context, and the situation of the testator with reference to the natural objects of his bounty. In the present case it is not unnatural that the testator may have had such confidence in the good judgment and discretion of his two granddaughters, with whose personal qualities he must have been somewhat familiar, that he was willing to allow their shares to pass out of the family, if they should choose to alienate or bequeath them. No other reason occurs to us, or has been suggested at the bar, for the careful and repeated reference to their executors and administrators, when compared with the equal care shown to keep the half of his estate destined for Mrs. Spalding's children, should she have any, strictly in the line of her descendants.

This conclusion is strengthened by the fact that, while he provides for his living son in law, Mr. Spalding, in case Mrs. Spalding should die before him without issue, he makes no provision for the benefit of any future husband of either daughter, although he contemplates the possibility of second marriages, by declaring at the close of his will that they shall take the estates left to them for their sole and separate use "free from the debts, obligations and control of any present or future husband." This also serves to show that the testator was more solicitous to provide for those who were in actual existence, than for those who might thereafter come, by birth or marriage, into the circle of his family. We therefore think that the term "legal representatives," in each of the places where it is used, with reference to the shares of Mrs. Bull's children, means "executors and administrators," and is one not of purchase but of limitation. *Tarrant* v. *Backus*, 63 Conn., 277.

Under this construction of the will, it gave half the resid-

uary estate, upon the death of the testator, to the children of Mrs. Bull, as a class, by an absolute title, subject only to her life estate. The phrase "upon her decease, I give, bequeath and devise the estate so given to her for life to her children" has the same legal meaning as if it had read "I give, bequeath and devise the estate so given to her for life, to her children, to come into their possession upon her decease." It was a vested remainder in fee.

As respects the other half of the residuum, the children of Mrs. Bull, for the same reasons, took as a class, upon the testator's decease, vested interests by way of a contingent remainder with a double aspect. Gray on Perpetuities, § 113*a*; Fearne on Remainders, 444, 445. The term "vested," as applied to remainders, has unfortunately been used in English and American law with two meanings. It may signify simply a remainder so far vested as to be capable of alienation, and the subject of succession by inheritance. It may also signify a remainder so absolutely vested that the remainder-man is certain to come into possession immediately upon the determination of the precedent estate. In applying the common law rule against perpetuities, no interest is ordinarily deemed vested which is not of the description last given. Gray on Perpetuities, §§ 101, 118. In applying the statute of perpetuities of this State, General Statutes, § 2952, the word may be properly used with either signification. That statute was enacted in furtherance of the ancient policy of this commonwealth, both as a Colony and as a State, to promote the equal inheritance and free transmission of landed property, unhampered by complicated trusts or entailments enduring from generation to generation. 1 Swift's System, 242, 247; *Daggett, J.,* in *Allyn* v. *Mather,* 9 Conn., 132.

Our statute against perpetutities, as it stood at the date of this will, forbade grants by deed or will to any persons except such, "or the immediate issue or descendants of such, as are in being at the time of making such deed or will." Statutes, Comp. of 1854, p. 630, § 4. The amendment passed in 1884 (General Statutes, § 2952), by which the phrase "at

the time of the delivery of such deed or death of the testa-
tor," was substituted for the words " at the time of making
such deed or will," we regard as merely declaratory of their
legal meaning.   The class of the children of Mrs. Bull was
therefore formed at the death of the testator.

It is unnecessary to consider whether, had Mrs. Spalding
left surviving descendants, the provision in their favor
would have been fully operative.   2 Redfield on Wills, 573.

If one of the contingencies affecting the remainder inter-
ests of the children of Mrs. Bull, could be held to be obnox-
ious to the statute of perpetuities, as to which we express no
opinion, the other was certainly one that was clearly stated
and open to no legal objection.   Upon the death of Mrs.
Spalding, in 1865, leaving no surviving descendants, the
remainder became a vested one, in the fullest sense of the
term, in the children of Mrs. Bull, and their heirs, execu-
tors and administrators, subject only to the life estates
created by the will.

To avoid unnecessary complication of statement, we have
treated the remainder interests which were vested in the
children of Mrs. Bull, as if no trusts had been interposed.
The trustees, of course, received the legal title, and the
remainder interests were subject to their legal estate.

The Superior Court is advised that the entire residuary
estate of the testator was vested upon his decease (so far
as to constitute a transmissible estate) in the two daughters
of Mrs. Bull, subject only to the life estates created by the
will, and to the contingency of Mrs. Spalding's death, leav-
ing surviving descendants.

In this opinion the other judges concurred, except *Ham-
ersley, J.*, who dissented.