THE H. J. LEWIS OYSTER COMPANY ET AL. *vs.* LUCY
T. WEST ET AL.

Third Judicial District, Bridgeport, October Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

In the amicable adjustment of a controversy between two oystermen in
1888, Lewis, the owner of a dock and other land used in connection
with the oyster business, conveyed the same to West, who cove-
nanted and agreed "for himself, his heirs, executors and adminis-
trators" to and with Lewis, "his heirs and assigns," that if he,
West, should at any time thereafter sell his oyster grounds, he
would reconvey the aforesaid property to Lewis for $2,500 plus
the value of permanent improvements made thereon by West in
the meantime; and that neither he, West, nor his legal representa-
tives would sell or convey such property to anyone else without
first giving Lewis six months in which to determine whether he
would repurchase or not. This instrument was duly recorded upon

the land records. In 1895 Lewis organized the plaintiff corporation and transferred to it his oyster business and the premises upon which it had been conducted. He died in 1902 without having disposed of his rights under the foregoing contract, and all his heirs have assigned their interests therein to the plaintiff. In 1907 West died, devising the premises to the defendant Lucy T. West, who executed a so-called lease of them to the other defendant for the term of 99 years at an agreed rental of $25,000 payable in the course of ten years, with the privilege of a renewal for another term of 99 years for $1. In a suit to enforce the specific performance of West's covenant to reconvey, it was *held:*—

1. That the trial court was warranted in treating the so-called lease for 99 years as a violation of the covenant not to convey the premises to anyone else without giving the plaintiff as assignee of Lewis the opportunity of buying them on the agreed terms.

2. That the covenants were in their nature assignable—being liable to a breach in the future—and bound the heirs, personal representatives, and assigns of each party, that being the plainly expressed intent of the agreement, notwithstanding the shorter form of expression, "said Lewis" or "said West," subsequently us· ' for the sake of brevity.

3. That the covenants to reconvey and not to sell to anyone else until six months after the plaintiff or his assignee had an opportunity to buy, attempted to create a contingent interest in the property which might not vest within the lifetime of persons in being or the lifetime of their immediate issue or descendants, and thus was in violation of the statute against perpetuities which was in force in 1888.

4. That it was clear also upon the facts found, that the covenant amounted to a very practical restraint on alienation.

A covenant binding the covenantor, "his heirs, executors and administrators," binds his assignees also, although not mentioned, if they take the property as purchasers with notice; for otherwise the covenantor could give a clear title to such an assignee and then acquire one himself by a conveyance from the assignee, and thus defeat his own covenant.

The common-law rule against perpetuities was in force in this State long before the statute against perpetuities was enacted in 1784; and each was employed, in furtherance of the ancient policy of this Colony and State, to promote the equal inheritance and free transmission of landed property, unhampered by complicated trusts or entailments enduring from generation to generation.

Restraints on alienation may be direct or indirect: direct, when inconsistent with the legal incidents of the estate granted, though they operate for a day only; and indirect, by postponing to a remote period the creation of future interests; and both the statute and the

common-law rule were aimed against the latter sort of restraints.

A deed, in common speech, means an instrument in writing for the conveyance of land.

Equitable interests in land, enforceable by specific performance, as well as strictly legal interests, are subject to the rule and the statute against perpetuities.

If the contingency upon which a remainder is to be enjoyed depends upon whether the owner of the property or his heirs or representatives will ever offer it for sale, the so-called remainder is not vested but contingent.

A contract which attempts to grant a continuing option of purchase unlimited in point of time, is void *ab initio*, because the contingent future interest may not vest within the period prescribed by the rule against perpetuities; and the result is the same if the contract, as in the present case, is one of a continuing optional right of preemption whenever the owner may elect to sell.

The mere fact that the covenantor may, under his contract, compel the covenantee to exercise or abandon his right of preëmption within six months after receipt of notice from the former, does not render the covenantee's right destructible by the covenantor in such a sense as to relieve the future limitation from the objection of remoteness.

Argued October 30th, 1918, re-argued April 10th, decided June 11th, 1919.

SUIT for the specific performance of an agreement to reconvey certain property to the plaintiffs under conditions prescribed in the deed, and for other relief, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and an interlocutory decree passed establishing the right of the plaintiffs to the property in question, after which the fair value of the permanent improvements made thereon by the defendants, and to which they were entitled, was determined by the court, *Maltbie, J.*, and final judgment rendered for the plaintiffs, from which the defendants appealed. *Error; judgment to be entered for defendants.*

The action is based on a covenant, Exhibit A, executed January 31st, 1888, by Pehr F. West in the manner prescribed for conveyances of land. It recites the amicable adjustment of a controversy formerly existing

between the parties, in respect of a lease and agreement for sale of the premises in question, made between Henry J. Lewis and a firm of which West was a member, and that "as a part of said adjustment said Lewis has this day conveyed by warranty deed said premises"— describing them—"to said West for the sum of Twenty-five hundred (2500) dollars, paid by said West to said Lewis; Now therefore, this agreement witnesseth, that in consideration of the foregoing; and for the further consideration of One Dollar in hand paid by said Lewis to said West, the receipt whereof is hereby acknowledged, the said Pehr F. West hereby covenants and agrees for himself, his heirs, executors and administrators to and with the said Henry J. Lewis, his heirs and assigns, as follows, to wit: in the event that the said West shall at any time hereafter sell all his oyster grounds in the Sound and Harbor of Long Island Sound, that he will at the option of the said Lewis to be expressed within six months from the time he shall receive written notice from said West, that he, West, has sold said oyster grounds, reconvey by like warranty deed to said Lewis said dock and premises described herein for the sum of Twenty-five hundred (2500) dollars and such sum in addition thereto, as may be agreed upon between said Lewis and said West to be the fair value, at the time of such reconveyance, of such permanent improvements as the said West may have made upon said premises subsequent to the purchase of the same from said Lewis, and if the said Lewis and said West cannot agree upon a fair value for said improvements, that each party shall select one appraiser, and the two thus selected shall select a third, and the appraisal of any two of said appraisers of the value of said improvements shall be binding upon said Lewis and said West: Also that he, the said West or his legal representatives will not sell or convey said dock and

premises herein described to any other party than said Lewis, without first giving to said Lewis an opportunity to purchase the same on the terms herein set forth, and that the said Lewis shall have six months from the time he shall receive written notice that said dock and premises are for sale, in which to determine whether he will purchase the same." The instrument was recorded on the Bridgeport land records.

In 1895 Lewis organized the plaintiff corporation and transferred to it his oyster business and the premises on which it had been conducted. Lewis died in 1902 without disposing of his rights under Exhibit A by will, and all of his heirs at law have assigned to the plaintiff. In 1907 West died leaving a will in which he devised the premises to the defendant Lucy T. West. In June Mrs. West executed a so-called lease, Exhibit B, of the premises to the defendant Gottlieb for the term of ninety-nine years at the agreed rental of $25,000 payable in the course of ten years, with the privilege of renewal for another term of ninety-nine years at an agreed rental of $1 for the additional term of ninety-nine years. This instrument was expressed to be subject to possible rights of the heirs and assigns of Lewis under Exhibit A.

The Superior Court found that the defendant West intended by Exhibit B to convey all her interest in the premises and to terminate the plaintiff's right of purchase under Exhibit A, and that the defendant West had conveyed the premises in attempted violation of the covenant contained in Exhibit A.

An interlocutory judgment was entered setting aside Exhibit B and directing the defendant to execute and deliver to the clerk of the court a good and sufficient deed of the premises to the plaintiff. Subsequently the value of the permanent improvements was fixed at $4,600, and the final judgment directed the delivery of

the deed to the plaintiff on the payment of $7,100 into court for the use of the defendant West.

*Carl Foster,* for the appellant (defendant West).

*John W. Banks* and *Joseph G. Shapiro,* for the appellant (defendant Gottlieb).

*Sanford Stoddard* and *Philo C. Calhoun,* for the appellees (plaintiffs).

BEACH, J. This case has been twice argued. On the findings the court did not err in treating Exhibit B as a violation of the covenant not to convey the premises without giving the plaintiff as assignee of Lewis the opportunity of buying them on the agreed terms.

The case presents two other questions. Whether the covenants in Exhibit A bind the assignees of West who take with notice, and if so, whether the covenant is void under the statute against perpetuities in force in 1888.

On the face of the covenant the intent to bind West, his heirs and administrators, in favor of Lewis, his heirs and assigns, is plainly stated. It is argued that the covenants are personal because the parties are subsequently referred to as "said Lewis" and "said West" without repeating the words of inheritance, except that once the phrase "West and his legal representatives" occurs. Some authority for making this claim may be found in *Clark* v. *Devoe,* 124 N. Y. 120, 26 N. E. 275, but, with great respect, we think that such a result violates the ancient rule of construction that "the law being the judge of an act, deed or bargain, consisting of divers parts, containing the will and intent of the parties, all tending to one end, doth judge of the whole, and gives every part his office to make up that intent,

and doth not break the words in pieces." *Earl of Clanrickard* v. *Sidney*, Hob. 273, 275, quoted in *Davis* v. *Lyman*, 6 Conn. 249, 252; *Easterbrook* v. *Hebrew Ladies Orphan Society*, 85 Conn. 289, 295, 82 Atl. 561.

The covenant in question is in its nature assignable. "The distinguishing feature of the real covenant is, that it may be broken at a future time, and it is this quality which renders it assignable." 1 Swift's Dig. 370. All parts of the covenant may be reconciled by construing the words "said Lewis" as referring to the antecedent phrase "Henry J. Lewis, his heirs and assigns," contained in the same sentence; and it is more reasonable to suppose that the parties used the words "said Lewis" as a convenient abbreviation for the antecedent phrase in the same sentence, than that they should first solemnly characterize the agreement as assignable and then intentionally deprive it of that quality.

It is noted that the defendant West, who takes as devisee out of the original covenantor, takes by purchase, and the covenant of West is made for himself, his heirs and administrators, omitting the word assigns. The omission of this word has often been held to be of no importance. "When the covenant extends to a thing *in esse*, parcel of the demise, the thing to be done by force of the covenant is *quodammodo* annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee, although he be not bound by express words." *Spencer's Case*, 1 Smith's Leading Cases, *116. For example, a lessor's covenant for the renewal of the lease binds the assignee of the reversion though assignees are not named in the covenant. 1 Swift's Digest, 358.

It was formerly held that a covenant made by the owner of the land would not, except in the case of a lease, burden the land so as to bind his assignee. But

this rule does not apply to assignees who take with notice. 1 Smith's Leading Cases, * 102.

In this case West covenants for himself, his heirs and administrators, intending thereby to incumber the land in their hands by an agreement for a conveyance on a contingency which may happen after his death. And Swift says: "For a covenant which runs and rests with the land, an action lies for or against the assignee, at common law, for the land passes with the incumbrance, *quia transit terra cum onere,* although the assignees be not named in the covenant." 1 Swift's Digest, 358. It will be noted that Swift does not limit his statement to leases, probably because our recording system makes such a limitation unnecessary.

What Swift says is particularly applicable to this case, for, as the preamble to the covenant states, the conveyance from Lewis to West and the covenant by West for a reconveyance—on the contingencies named—were parts of one transaction described therein as the adjustment of the prior controversy in respect of the same premises. In equity West never owned the absolute fee. He took the premises incumbered by the covenant for a reconveyance, and it would be inequitable and inconsistent with the limitations of his own title, for him to claim the right to convey the premises to an assignee with notice, free from the equitable incumbrance to which it was subject in the hands of himself, his heirs, executors and administrators. If he could give a clear title to such an assignee, he could get one himself by a conveyance from his assignee, and thus defeat the covenant.

Whether the devise to Lucy T. West was a breach of the covenant need not be determined, for the finding is that the plaintiff has never had the notice or the opportunity to purchase to which it is entitled under Exhibit A; from which it follows that the six months

within which the plaintiff might determine whether to purchase the property had not started to run before this action was brought.

The remaining question is whether the contract, which is unlimited in point of duration, is void under the statute of perpetuities in force in 1888.

For the purpose of assigning to the statute a somewhat different effect from that ordinarily attributed to the rule against perpetuities, it is claimed that the common-law rule never was a part of our law, until after the statute was repealed in 1895. This claim is answered by *Fitch* v. *Brainerd*, 2 Day, 163, 189, where it is said: "Though the common law of England hath not, *as such*, nor ever had, any force here; yet, in the progress of our affairs, whatever was imagined at the beginning, it long since became necessary, in order to avoid arbitrary decisions, and for the sake of *rules*, which habit had rendered familiar, as well as the wisdom of ages matured, to make that law our own, by practical *adoption*—with such exceptions as a diversity of circumstances, and the incipient customs of our own country, required." From the preface to Kirby's Report it is certain that the practical adoption above described took place long before 1784 when the statute was passed. Subsequently the common-law rule has been referred to in our decisions as if it formed the background for the statute. *Jocelyn* v. *Nott*, 44 Conn. 55, 59; *Rand* v. *Butler*, 48 Conn. 293, 299; *St. John* v. *Dann*, 66 Conn. 401, 404, 34 Atl. 110; *Connecticut Trust & Safe Deposit Co.* v. *Hollister*, 74 Conn. 228, 232, 50 Atl. 750.

In *Belfield* v. *Booth*, 63 Conn. 299, 304, 27 Atl. 585, the statement is made, as if it were elementary, that "the common-law rule against perpetuities remains in full force in this State." And as late as *Hoadley* v. *Beardsley*, 89 Conn. 270, 279, 93 Atl. 535, in speaking of

a claim that a trust created by the will of a testator who died in 1887 was invalid as embodying a trust for accumulation, we said: "The second proposition involves an appeal to the well-established common-law principle, impliedly recognized by us in *Woodruff* v. *Marsh*, 63 Conn. 125, 137, 26 Atl. 846, and in *Connecticut Trust & Safe Deposit Co.* v. *Hollister*, 74 Conn. 228, 232, 50 Atl. 750, that trusts for accumulation must be strictly within the limits of the rule against perpetuities, and that, if such a trust exceeds those limits, it is void." A convincing demonstration that the common-law rule existed in this State before the statute, is found in the fact that, on the first occasion which arose after the repeal of the statute, the common-law rule was applied in this court as a matter of course and without comment by court or counsel. *Bates* v. *Spooner*, 75 Conn. 501, 54 Atl. 305. It cannot therefore be successfully contended that our former statute was materially different in its purpose from the common-law rule. "That statute was enacted in furtherance of the ancient policy of this commonwealth, both as a Colony and as a State, to promote the equal inheritance and free transmission of landed property, unhampered by complicated trusts or entailments enduring from generation to generation." *Johnson* v. *Edmond*, 65 Conn. 492, 499, 33 Atl. 503.

Professor Gray says: "The tying up of property, the taking of it out of commerce, can be accomplished either, first, by restraining the alienation of interests in it, or, secondly, by postponing to a remote period the arising of future interests." Gray on Perpetuities (3d Ed.) § 118*a*. This language points clearly to the distinction between direct restraints on alienation which are invalid, when inconsistent with the legal incidents of the estate granted, though they operate for a day only; and indirect restraints on alienation which the law tolerates within the limits of the rule against

perpetuities. It may be conceded that this covenant does not create a direct restraint on alienation of the kind above referred to; but the question remains whether it does not take property out of commerce "by allowing interests to arise on future contingencies, beyond the control of the present holders." Gray on Perpetuities (3d Ed.) § 603*a.*

Our statute was aimed, as was the common-law rule, against the unreasonable continuance of that sort of indirect restraints on alienation which accomplished its purpose by the creation of future interests. "All estates . . . must vest during the lifetime of some person in being, or the lifetime of the issue of some person in being." *Jocelyn* v. *Nott,* 44 Conn. 55, 58. "If the donor had provided that upon the cessation of use by the corporation the land or its representative value in money should be paid to his descendants," this whole prohibition would be void "for the reason that a century might elapse before such cessation." *Storrs Agricultural College* v. *Whitney,* 54 Conn. 342, 345, 8 Atl. 141. See also the other cases above cited. It is impossible to say that our statute was aimed at restraint on alienation to the exclusion of remoteness in vesting, for the test of its applicability to any case is remoteness, and this is the necessary result of its language. And as our statute pursued the same objects as the common-law rule, we may look to the decisions under that rule for assistance in the determination of this case.

It is not seriously denied that the covenant in question is a "deed." That word has always been used in our law in two senses. "A deed is defined to be a writing or instrument under seal, and delivered by the parties. . . . The general name of deed, is legally applicable to a variety of instruments and obligations, but in common speech is appropriated to a writing for the conveyance of lands." 1 Swift's Dig. 119, 120.

The statute as applied to wills includes gifts or personalty, and by analogy it would appear that the stateute must cover the creation of estates in personalty by living persons as well as by will. At any rate, this covenant has been held to be a contract for the conveyance of land, which the court will specifically enforce by requiring the execution of a formal deed; and so for all purposes of creating a future interest, it is a deed.

Plaintiff claims that the covenant creates a contract right and not an interest in the land. Gray, § 329, says: "The rule against perpetuities concerns rights of property only, and does not affect the making of contracts which do not create rights of property." The example he gives is of a warranty, which, though it runs with the land, creates no right in and is not a future limitation of any particular property. Then, § 330, says: "Where, however, a contract raises an equitable right in property which the obligee can enforce in chancery by a decree for specific performance, such equitable right is subject to the rule against perpetuities."

This would seem to be almost self-evident. If the rule or the statute applies only to interests in land which are enforceable by an action at law, and does not apply to interests in land which may be enforced in equity, it assumes the proportion of a mere technicality. As pointed out in *Johnson* v. *Edmond*, 65 Conn. 492, 33 Atl. 503, the broad basis of the statute forbids the drawing of any technical distinctions which will enable equitable rights in property, enforceable by specific performance, to escape its operation.

In *London & S. W. Ry. Co.* v. *Gomm*, L. R. 20 Ch. Div. 562, Jessel, M. R., speaking of the option contract involved, said (p. 580): "Whether the rule applies or not depends upon this as it appears to me, does or does not the covenant give an interest in the land? If it is a bare or mere personal contract it is of course not obnox-

ious to the rule, but in that case it is impossible to see
how the present appellant can be bound. He did not
enter into the contract, but is only a purchaser from
*Powell* who did. If it is a mere personal contract it can-
not be enforced against the assignee. Therefore the
company must admit that it somehow binds the land.
But if it binds the land it creates an equitable interest
in the land. The right to call for a conveyance of the
land is an equitable interest or equitable estate. . . . It
was suggested that the rule had no application to any
case of contract, but in my opinion the mode in which
the interest is created is immaterial. Whether it is
by devise or voluntary gift or contract can make no
difference. The question is, what is the nature of the
interest intended to be created."

Plaintiff also claims that the interest created by the
covenant is vested. The definition of a vested re-
mainder is one where the remainderman is certain to
come into possession immediately upon the determina-
tion of the precedent estate. *Johnson* v. *Edmond*, 65
Conn. 492, 33 Atl. 503. This definition necessarily
involves the assumption that the precedent estate will
determine. But here the uncertain contingency is
whether West and his heirs and representatives will
ever offer the land for sale, or attempt to sell it. Un-
til that contingency happens, Lewis and his heirs and
assignees have no vested right at all; and since that
contingency may never happen, the interest attempted
to be created by the covenant is contingent and not
vested.

It seems to be settled that a contract which attempts
to grant a continuing option of purchase unlimited in
point of time is void *ab initio*, because it attempts to
create a contingent future interest which may not
vest within the period limited by the rule against per-
petuities. *London & S. W. Ry. Co.* v. *Gomm*, L. R. 20

Ch. Div. 562; *Barton* v. *Thaw*, 246 Pa. St. 348, 92 Atl. 312; *Winsor* v. *Mills*, 157 Mass. 362, 366, 32 N. E. 352.

The plaintiff contends that these cases do not apply to the contract before us, because this contract does not attempt to create a continuing option unlimited in point of time; that no option arises until notice is given that the property is for sale, and then the option which does arise runs for six months only. We think this distinction is superficial, because it does not affect the fundamental questions whether the contract attempts to create a contingent future interest, and if so, whether there is a possibility that such interest may not vest within the period prescribed by law. No doubt the very object of this contract was to create an interest in the land in favor of the covenantee; and there is really no difference in this respect between a contract for a continuing option and a contract for a continuing right of preëmption. In *Barton* v. *Thaw*, 246 Pa. St. 348, 92 Atl. 312, the covenant was a unilateral contract upon an executed consideration (the conveyance of the property to the covenantor) to reconvey the land upon an express condition precedent. In this case the covenant is a unilateral contract upon an executed consideration to reconvey the land upon the successive performance of two conditions precedent: that the convenantor should sell or offer to sell, and that the covenantee should within six months after notice demand a conveyance at the agreed price. Evidently the restraint upon alienation is just as effective in the case of a preëmption contract as in the case of an option contract, and the difference is that instead of a continuing affirmative promise on the part of the covenantor to convey the premises on demand, there is a continuing negative promise on his part not to convey the property to anybody else without first offering it to the covenantee. 28 Yale Law Journal, 66.

To put it in another way, the vesting of the contingent interest is dependent on the will of one person only in the case of a continuing option of purchase at the will of the option holder; while in the case of a continuing optional right of preëmption whenever the owner may elect to sell, the vesting of the contingent interest is dependent on the will of two persons. In either case the contingent interest of the covenantee cannot be gotten rid of at the will of the covenantor, and in either case there is the same fatal possibility that such contingent interest may not vest within the period limited by the rule.

The plaintiff claims that the future limitation in this case is "destructible by the person for the time being entitled to the property," within the meaning of Lewis' definition of a perpetuity, and that for this reason the contract, although it provides for the possible vesting of a future interest after the expiration of the period provided by law, is not void under the rule. Lewis on Perpetuities, Chap. 12 (52 Law Library, p. 163). It is true that the contract enables the covenantor, by giving notice, to compel the covenantee at any time to exercise or abandon his right of preëmption within six months after the receipt of notice. But the effect of giving the notice is to convert the covenantee's contingent right to demand a conveyance into an absolute right to do so within six months. The covenantee's right is not destructible by the covenantor in the sense which relieves the future limitation from the objection of remoteness. What is meant by a destructible interest in that sense is clearly explained by Gray, as follows: "And if a man has the present unconditioned right to acquire the present absolute interest, he is regarded by the rule against perpetuities as already having such interest. A tenant in tail is such a person; a donee of a general power exercised by deed is also such a person.

To this extent the rule sacrifices form to substance; but the substance must be there. There must be a person who has the undoubted right to become the present absolute owner." Gray on Perpetuities (3d Ed.) p. 435. A tenant in tail is such a person because he can destroy a future limitation by barring the entail. Gray on Perpetuities, p. 383; Lewis on Perpetuities (52 Law Library, pp. 664, 665). A donee of a general power to be exercised by deed (not by will) is such a person because he can appoint to himself and therefore is practically the owner. Gray on Perpetuities (3d Ed.) p. 435.

It follows that this covenant attempts to create a contingent interest in property which may not vest within a life or lives in being and the lives of their immediate issue or descendants.

It is also certain that the covenant amounts to a very practical restraint on alienation. It appears from this record that the property would have been worth $25,000 to the devisee West, if it could be sold freely. But because of this covenant she has been awarded only $2,500 plus improvements valued at $4,600. It is not consistent with the public policy of Connecticut as expressed in the rule against perpetuities and in the former statute against perpetuities, that the dead hand of West should rest on this property and control its price and its assignability for an unlimited future.

There is error, and the cause is remanded with direction to enter judgment for the defendants.

In this opinion Prentice, C. J., Roraback and Wheeler, Js., concurred. Gager, J., concurred in the result and in the opinion, except that portion of it which holds that the contract in question survived the death of Lewis.