[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Webster Trust ("Webster") and Pasquale Young ("Young"), Trustees of the Estate of John Lescovich, seek specific performance to have the Court order that the property CT Page 14999 once owned by Russell Roly and Eleanor Augur Roly be sold to the plaintiffs pursuant to a Right of First Refusal (see Exhibit C). The property being sought by the Trustees of John Lescovich is the property now owned by the defendants Gerald Adinolfi and Ruth Adinolfi. Ruth Adinolfi is the daughter of Eleanor Augur Roly and the stepdaughter of Russell Roly.
At the time of trial, Webster and Young, as trustees, withdrew their claim against Russell Roly Sr. because they were not seeking money damages against any of the defendants. Essentially the Trustees were seeking that the Adinolfi's who purchased the property from the parents of Ruth Adinolfi on June 27, 1997 for the total sum of $100,000 (see Exhibit 12) be ordered conveyed to the Estate of John Lescovich for that sum of money.
On July 5, 1977 Russell Roly Sr. ("Russell") and his wife Eleanor Augur Roly ("Eleanor") by warranty deed conveyed Parcel B consisting of 9.84 acres to John Lescovich ("John") (see Exhibit 1). On September 26, 1977 Russell and Eleanor granted to John the Right of First Refusal for "all land owned by Grantors West of land conveyed by the Grantors on the date of this instrument. It is apparent from the dates of the warranty deed and Right of First Refusal no property was transferred to the Grantee Lescovich that date. The plaintiff Young who took the acknowledgment of the parties did not testify in this case as to the discrepancy in the dates.
The plaintiffs only called two witnesses in this case: the widow of John Lescovich, Frances Lescovich, and David Freese, an officer of Webster Bank.
John Lescovich died March 9, 1994 while still a resident at 55 Augur Road Extension, Northford, Connecticut, in Marathon, Florida (see Exhibit 4). Under the terms of John's Trust Agreement, Lafayette Bank Trust Co. and Pasquale Young, as trustees, dated June 11, 1991, received all property owned by John for the John Lescovich Family Trust (see Exhibit 6) which was divided into a Marital Trust and a Non-Marital Trust. David Freese of Webster Bank, the present plaintiff and co-Trustee, assumed responsibility of this trust in April 1999. His testimony did not persuade the court with respect to whether or not the notice requirement in the Right of First Refusal was given. Webster was the successor of another bank after Lafayette Bank 
Trust Company. His testimony was that he did not see any written CT Page 15000 notice in the voluminous files that he examined. All the land by order of the Probate Court under the agreement of June 11, 1991 was ordered into the name of Young and Webster on November 13, 1997. Nothing contained in the order of distribution includes the Right of First Refusal. Exhibit 10. An appraisal dated May 7, 1998, of the property done at the behest of Young, showed a value of $340,000.
Frances Lescovich could not provide any probative evidence relevant to the Right of First Refusal other than that when John bought the property back in 1977 he was seeking additional property to expand their horse farm.
At the time of conveyance to her daughter of the property located west of Parcel B, Eleanor was under a conservatorship with Russell as her conservator.
Recited in the Right of Refusal is a qualification relating to the notice. "The Grantors agree to give the grantee personalnotice of any bona fide offer to purchase any or all of said landand the Grantee shall give notice to grantor within (12) hours ofthe receipt of notice by him of his intention to buy any suchland on the same terms." (Emphasis added).
Plaintiffs in this case rely on Hare v. McClellan,234 Conn. 581 in their argument for specific performance.
At page 588-589, Id., the court held:
 "A right of refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption. `A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specific terms, but, and this is the important point, only if the seller decides to sell. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option.' Annot., 40 A.L.R.3d 920, 924 (1971).
 "Whether a preemptive option is reasonable or unreasonable is a question of law for the Court. Cf. Robert S. Weiss Associates, Inc. v. Wiederlight, CT Page 15001 208 Conn. 525, 530, 546 A.2d 216 (1988) (reasonableness of covenant not to compete); Scott v. General Iron Welding Co., 171 Conn. 132, 137-38, 368 A.2d 111
(1976) (same). In making its determination of whether such a preemptive option is reasonable, the court must take into account the following factors: `(1) the purpose of the pre-emption, (2) its duration, and (3) the method of determining the price to be paid.'[7]
Annot., supra, 40 A.L.R.3d 926; Metropolitan Transportation Authority v. Bruken Realty Corp. , 501 N.Y.2d 156, 167-68, 492 N.E.2d 379, 501 N.Y.S.2d 306
(1986);"
[7] provides: "We have never before attempted to define the factors that must be weighed in determining whether a preemptive option is `reasonable' or `unreasonable'. Although older cases of this court have addressed the validity of such rights, none of the opinions in those cases clearly sets forth why the right was being held valid or invalid. Nevertheless, the results reached in these cases can be understood by reference to the three factors announced today, and specific ally the third factor relating to the method of setting the price for the property. For example, in Lewis Oyster Co. v.West, 93 Conn. 518, 107 A. 138 (1919), the holder of the preemptive option was entitled to purchase the seller's property for a flat price of $2500 plus improvements, regardless of the market price or the price offered by a third party buyer. This court, in holding the provision invalid, stated that "[i]t is not consistent with the public policy of Connecticut . . . that the dead hand of the [property seller] should rest on this property and control its price. . . .' Id., 533. As the Restatement recognizes, "[f]ixed price preemptions and preemptions at a percentage of [market price] are the most commonly used preemptive provisions that [are restraints on alienation]. . . . The effect of such a provision on the alienability of property is directly proportional to the difference between the market value and option price of the property.' 1 Restatement (Second), Property, Donative Transfers § 4.4, reporter's note 4 and 4(a) (1983)."
As pointed out in the foot note of Hare, id 589, in this case before this court there is no fixed price for the purchase of the CT Page 15002 property. Nor any time limitations. The expectation of the plaintiffs to purchase this property which was worth in excess of three hundred thousand dollars for the purchase price paid by a daughter of the grantors is certainly unreasonable and inequitable. The grantee of the Right of First Refusal at no time up to his death showed any interest in the land. Only after his death and with some other considerations not testified to is a claim to purchase the property for less than true value in excess of $300,00.
The argument of the plaintiffs that because there is a method to determine the price by being set by a bona fide offer
satisfies this court to look favorably upon ordering specific performance at the same purchase price given to a daughter is not only unreasonable but unrealistic. This court infers that there were other considerations in determining the purchase price for her. She had lived on the property most of her life. The plaintiffs failed to prove that the price paid by the daughter was a bona fide offer or that they were ready and willing to pay the market price.
The defendants in this case filed a special defense of laches just before trial which this court need not address.
 "`The availability of specific performance is not a matter of right, but depends rather upon an evaluation of equitable considerations. Morris v. Costa, 174 Conn. 592, 599, 392 A.2d 468
(1078); Parkway Trailer Sales, Inc. v. Wooldridge Bros., Inc., 148 Conn. 21, 166 A.2d 710
(1960). The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. Robert Lawrence Associates, Inc. v. Del Vecchio***, 178 Conn. 1, 18-19, 420 A.2d 1142 (1979); Sidor v. Kravec, 135 Conn. 571, 573-74, 66 A.2d 812 (1949).' Kakalik v. Bernardo, 184 Conn. 386, 395, 439 A.2d 1016 (1981.
 Likewise, `[a] trial court's determination to award or to refuse damages as an incident to a decree of specific performance rests to a significant extent in the exercise of the court's discretion, "depending upon the equities of the case and based on reason and sound judgment." Schneidau v. Manley, 131 Conn. 285, 289, 39 A.2d 885 (144);"
CT Page 15003
Allen v. Nissaley, 184 Conn. 539, 546.
It would be inequitable to gant the plaintiffs specific performance.
Accordingly judgment is entered in favor of the defendants.
Frank S. Meadow, Judge Trial Referee