ROBERT W. BATES *vs.* CHARLES W. SPOONER ET AL.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The common-law rule against perpetuities is not satisfied by the mere
vesting of the legal title in trustees : it requires that the beneficial
estate shall vest within a life or lives in being and twenty-one years
(to which a possible period of gestation may be added) thereafter.
The rule does not, however, require, in case of a will, that the particular
individuals in whom the title is to vest shall be ascertainable at the
testator's death ; it is enough if it be certain that they will be
definitely ascertainable within the prescribed period.
A testator devised real estate to his executors in trust to sell and safely
invest the proceeds as soon after his decease as it could be done in
the exercise of their best business judgment. He also requested
that "the sales of my property be not pressed upon the market,
as it may take several years to dispose of my estate advantageously.
Therefore I trust that great patience and care will be exercised by
my executors in the management and disposition of the same."
Until the complete conversion of the real estate, the trustees were
to pay "such sums as they may deem necessary for the mainte-
nance and support of my children, and for the maintenance, support
and education of any family which either of them may leave."
When the real estate had been fully sold, if the estate amounted to
a given sum certain bequests, and if it amounted to a greater sum
additional bequests, were to be paid, and the entire estate was then
to be divided into twenty-four parts, of which ten were to go to
testator's daughter *L*, and to her heirs forever, and seven to the
executors in trust, to pay over so much of the income as they might
think best for the support of testator's son *C* during his life. At
*C's* death, the principal and accumulated interest of the seven
shares were to go to his children, if any, otherwise one half was to
go to *L*, or to her heirs at law, and one half to the trustees for
testator's son *H*, or to *H's* heirs at law. The other seven shares
were to go to the executors in trust for *H*, with like provisions,
*mutatis mutandis.* *Held* :—
1. That the devise was not void under the rule against perpetuities,
because of the provision for the support and education of the chil-
dren's families, since that provision was to be construed as refer-
ring to the education of their children during minority only.
2. That the bequest to *L* vested in point of right at the time of the
testator's decease.
3. That the contingent remainders, limited after the life estates of the
sons, vested at the death of the surviving son.

4. That the vesting of the bequests in remainder would not be deferred merely because their respective amounts could not be ascertained until the conversion of the realty had been fully accomplished.

The ordinary rule is that estates in remainder must vest within the prescribed period, not only so as to be capable of alienation and of succession by inheritance, but so absolutely as to make it certain that the remaindermen will come into possession immediately after the determination of the preceding estate.  But a possession for another is his possession under this rule.  The possibility that the executors, in the present case, might still be in possession of the real estate for the purpose of sale after the expiration of the lives in being, does not, therefore, invalidate the devise.

Whether it could be assumed as possible that the conversion might not be completed within the lives in being and twenty-one years thereafter, *quœre.*

Even if so, it would not invalidate the devise, first, because the law regards an equitable conversion as if it were completely effected at the testator's death, for all purposes of succession; and second, because, if the provisions for the conversion of the real estate contravened the rule against perpetuities, they would fail and leave those for the vesting of the title unaffected.

*It seems* that this court, in disposing of a reservation, may, on the request of both parties, consider facts admitted by both parties at the hearing, though not stated in the record.

Argued January 20th—decided March 4th, 1903.

ACTION under General Statutes, Rev. 1902, § 4053, by an execution creditor who had levied on certain real estate, to ascertain and establish his title; brought to the Superior Court for Fairfield County and reserved (*Gager, J.*), on a finding of facts, for the advice of this court.  *Judgment advised for the defendants.*

The case is sufficiently stated in the opinion.

*Robert E. DeForest,* for the plaintiff.

*Goodwin Stoddard* and *William B. Boardman,* for the defendants Morris B. Beardsley and Frederick Hurd.

BALDWIN, J.  The plaintiff claims title under a levy of execution against Charles W. Spooner on an undivided third interest in certain lands vested in him as an heir at law of Clapp Spooner, who died in 1899.  The will of Clapp

Spooner purports to dispose of the lands in question, but the plaintiff insists that this disposition is void, and so that an undivided interest in them descended as intestate estate to Charles W. Spooner.

The testator, by a residuary devise, gave these lands to his executors in trust, to hold and manage, paying from the income, or proceeds of sales, to each of his three children (who were his sole heirs at law), " such sums as they, my said trustees, may deem necessary for the maintenance and support of my said children and for the maintenance and support and education of any family which either of them may have until such time as by the terms of this will there shall be a division of my estate." He directed his " executors and their successors in said trust " to sell and convey all his " real estate and convert the same into safe investments," as soon after his decease as it could " be done in the exercise of their best business judgment." He then proceeded as follows: " It is my especial request that after a sufficient sum shall have been obtained from my estate for a very comfortable support and maintenance of my daughter and sons, that the sales of the balance of my property be not pressed upon the market as it may take several years to dispose of the estate advantageously. Therefore, I trust that great patience and care will be exercised by my executors in the management and disposition of the same. At such time as this shall have been fully accomplished and my real estate having been entirely sold, my estate shall be ready for division; if my estate shall then amount to the sum of $300,000, three hundred thousand dollars, I direct my said executors to pay therefrom to my niece, Elizabeth K. Patterson, wife of Robert, of Middletown, Connecticut, if living; and if she be deceased at that time, to her heirs-at-law, to be divided among them as if the same were her intestate estate, the sum of five thousand dollars ($5,000)." Should his estate then amount to $450,000, legacies were left to Catherine Towne and Lillian Gay, after which came this provision: " When the above directions shall have been carried out and my indebtedness shall have been fully paid and my

real estate sold and converted into approved securities then subject to the said conditional legacies to Elizabeth K. Patterson, Lillian Gay and Catherine Towne, I direct my said executors or their successors in said trust at that time to divide my entire estate, as it shall then exist, into twenty-four equal parts and their division into these parts, as well as their allotment of said parts among my children shall be final and binding upon all parties in interest. I then give and bequeath ten of these said parts to my daughter, Lily T. Spooner, to her and her heirs absolutely and forever. I give and bequeath to my said executors, or their successors at that time, seven of said parts, in trust, nevertheless, for the following uses and purposes, to wit, to take, hold, invest and reinvest the same and pay over at such times and in such sums as they may deem that circumstances require such portions of the net income therefrom as they may think best to or for the maintenance and support of my son, Charles W. Spooner, during his natural life. Upon his decease, should he leave him surviving a child or children, this trust shall thereupon cease and the principal of said trust fund, together with any accumulated interest thereon, I give to such child or children absolutely to be divided among them as if it were the intestate estate of said Charles W. Spooner. Should my said son, Charles W., upon his decease leave no issue or the representatives of children deceased, and in such event, should my daughter, Lily T., and my son, Harry C., both be living, then I give one-half of principal and accumulated interest of said trust fund to said Lily T. absolutely; and the other one-half I direct said trustees to take, hold and manage in the same manner as is hereinafter in this will provided in the case of the trust created for the benefit of the said Harry C. But if, in the event of the death of my son, Charles W., without issue or the representatives of children deceased, my daughter, Lily T. should not be living, then I give at such time the one-half of said trust fund and accumulated interest that said daughter would have received, if living to her heirs-at-law, to be divided among them as if it were her intestate estate; and if upon the

decease of my said son, Charles W., without issue or the representatives of children deceased, my son, Harry C., should not be living, then I give at such time the one-half of said trust fund and accumulated interest of which said son would have received the income, if living, to his heirs-at-law to be divided among them as if it were his intestate estate." The remaining seven parts were disposed of in a precisely similar way, *mutatis mutandis*, in favor of his other son, or his next of kin.

At the time of the testator's death, no child was married, and none of them have since married.*

The plaintiff claims that the will contravenes the common-law rule against perpetuities.

That the legal estate vested upon the death of the testator in his executors is, in respect to this point, immaterial. The law searches out the beneficial estate and demands that this shall vest within a life or lives in being and twenty-one years (or, as the case may be, twenty-one years and the period of gestation) thereafter. It does not demand that the particular individuals in whom it must be vested shall be definitely ascertainable at the testator's death. It is enough if it is certain that they will be definitely ascertainable within the period limited after that event.

The plaintiff contends that the will disregards this limitation, and does not contemplate the vesting of any beneficial interest in the *corpus* of the residuary estate until the executors divide it into shares and make an allotment of them.

In support of this contention, he urges, first, that the trust interposed for the maintenance of the three children, pending the sale of the real estate, and for the support and education of any family which either may have, may endure so long as to postpone the vesting of the remainders beyond the period permitted, because, by its reference to their families, the will provides for the education of those yet unborn.

---

* This fact did not appear upon the record, but, on inquiry by the court, was admitted by counsel on both sides, who agreed and requested that it should be taken into consideration, if deemed of any materiality in the disposition of the cause.

The provision is naturally referable to education of their children during minority, and to be construed as thus limited. *St. John* v. *Dann*, 66 Conn. 401, 404. This trust therefore could, under no circumstances, endure beyond twenty-one years and nine months after the death of the survivor of the testator's children.

It is next urged that all the real estate may not be sold within a life or lives in being at the testator's death and twenty-one years afterwards, and that until all has been sold the remaindermen cannot be ascertained.

So far as the provision in remainder for Lily T. Spooner is concerned, ten of the shares into which the estate is, when ready for distribution, to be divided by the executors or their successors in the trust, are "then" bequeathed to her absolutely. To this disposition the testator, in the final clause of his will, thus refers : " I wish to place on record my reason for giving to my daughter, Lily T., a somewhat larger portion of my estate than I have herein given to my sons, and that is, that she has given the best part of her life to my interests as well as those of her brothers. Should either of my children or their representatives take any action to prevent the probate of this will or the carrying out of any of its provisions, he shall forfeit all interest under this will and receive no part of my estate."

Looking at the will as a whole, and to its paramount intent to provide for the testator's children as the main objects of his bounty, it is apparent that he meant the absolute bequest in remainder to his daughter to vest in right at the time of his decease. *Farnam* v. *Farnam*, 53 Conn. 261, 278, 279, 281 ; *Newberry* v. *Hinman*, 49 id. 130, 132; *Johnson* v. *Edmond*, 65 id. 492, 499. In respect to the contingent remainders, expectant upon the termination of the life estates of the sons, his intent is equally apparent that none of them should become vested ones until the decease of one of the sons, nor all of them until the decease of both. Upon the first of these events, the seven shares in which the son so dying had had a life estate were to vest either (1) in his children, if any, him surviving, absolutely; or (2) in his children, if any, him

surviving, and those who may then be the legal representatives of any deceased child of his, *per stirpes*, absolutely ; or (3) one half absolutely to Lily T. Spooner or her heirs at law, and one half in an active trust for the life and benefit of Harry C. Spooner, with remainder to his (Harry's) heirs at law, absolutely.     Unless, then, the delay allowed for the conversion of the realty into personalty can avail to postpone the vesting of these remainders, the remotest of them must become vested on the death of the survivor of the two brothers. Should the first to die leave surviving descendants, they take, upon his death, an absolute title.    Should he leave none, half of the seven shares goes absolutely to his sister, if she be then living, and if she should not be then living, to those who upon her decease were her heirs at law ; while the other half, subject to a beneficial life estate in his brother, goes absolutely to those who upon the latter's decease may be his heirs at law.

It is immaterial that whether the bequests in remainder will cover the entire residuary estate or not can only be ascertained when the conversion is fully accomplished, because until then it will be uncertain both whether the net income will suffice for the support of the children and their families, and whether the conditional legacies are to be deducted. The vesting of an estate is not deferred by contingencies of such a nature, which affect only its amount or value.    *Mallory* v. *Mallory*, 72 Conn. 494, 500.

It remains to consider whether the testator's intent is to be defeated on account of his directions as to the length of time during which the executors and their successors in the trust may retain the title to the residuary estate for the purposes of conversion.

In applying the common-law rule against perpetuities to estates in remainder, the ordinary rule is they must vest within the period prescribed, not only so far as to be capable of alienation and the subject of succession by inheritance, but so absolutely as to make it certain that the remainderman will come into posse sion immediately upon the determination of the preceding estate.    *Johnson* v. *Edmond*, 65 Conn. 492,

499. A possession, however, for another is his possession. The executors were to hold their title, and to retain possession for a longer time than that customarily occupied in the settlement of an estate, for the sole benefit of the testator's children, and of those entitled in remainder. It is possible that all of his children may die before the conversion of the residuary estate into personalty has been completed, and so before any division into, or allotment of, shares has been made. But had they survived their father only a day, the will would still have made a valid disposition of the residuary estate. The estate of the daughter would have immediately succeeded to her interest, namely, to the ten shares to be received whenever the executors should be ready to make the allotment; and the remainders and cross-remainders in the other shares would also have then become vested in right, the time of enjoyment only being deferred. *Cropley* v. *Cooper*, 19 Wall. 167, 176 ; *Johnes* v. *Beers*, 57 Conn. 295, 303.

It is unnecessary to determine whether it can be regarded as possible that the conversion may not be completed till the lapse of more than twenty-one years. See *Belfield* v. *Booth*, 63 Conn. 299; *Brandenburg* v. *Thorndike*, 139 Mass. 102. If it be possible, the result, as respects the claim of the plaintiff, would be the same, and for two reasons: (1) The will makes an equitable conversion. Equity—and this is an equitable action—regards the conversion, for all purposes of succession, as if it were completely effected at the testator's decease. *Duffield* v. *Pike*, 71 Conn. 521, 526 ; *Underwood* v. *Curtis*, 127 N. Y. 523, 28 Northeastern Rep. 585 ; *Henderson* v. *Henderson*, 133 Pa. St. 399, 19 Atlantic Rep. 428. That the time for the division of the estate into shares for allotment was not to arrive until the conversion had been made in fact, did not therefore defer the time or times when the right of any legatee to benefit by the allotment would otherwise become a vested one. (2) If the period allowed for conversion can be construed as possibly exceeding the lives of the children and twenty-one years thereafter ; and if the possible postponement beyond that period of the vesting of possession in the remaindermen, consequent upon that construction of the will,

would invalidate the provisions in their favor; then, inasmuch as their equitable title must vest within that period, it is not their estates, but the direction for a conversion, that would fail. Gray, Restraints on the Alienation of Property, 97.

The Superior Court is advised that the trust provisions in the will of Clapp Spooner do not contravene the rule of law against perpetuities.

Costs will be taxed in this court in favor of the defendants.

In this opinion the other judges concurred.