[Civ. No. 13020. First Dist., Div. One. Sept. 17, 1946.]

Estate of CATHERINE V. CAMM, Deceased. HORACE O. CAMM, as Administrator, etc., Appellant, v. KARL BROOKS, Respondent.

Lewis H. Cromwell and A. Dal Thomson for Appellant.

Geary & Tauzer for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from an order refusing to settle the first and final report and account of the administrator of the estate of Catherine V. Camm.

The parties are before this court on a clerk's transcript, and the only issue involved is whether certain "accrued, accumulated income" of a trust created by decedent was part of her estate and available as such to her creditors, or whether under the terms of the trust it vested at her death in a remainderman free from any claims of her creditors. The "remainderman" herein involved is appellant, the son of decedent-trustor, and administrator of her estate.

Respondent is a creditor of decedent for the sum of $540.82. His claim was allowed, but appellant administrator in his final report and account set out that no assets remained in the estate for the payment of respondent's claim.

Respondent filed objections to such final report and account, setting forth therein that appellant had received funds out of several bank accounts standing in his mother's name, but had failed to charge himself as administrator with the receipt of such monies.

The court found that in January, 1925, decedent transferred certain of her properties in trust to the Wells Fargo Bank and Union Trust Company; that certain amendments thereto were made, the last of which is the provision involved upon this appeal, and reads as follows: " (a) The Trustee shall pay the entire net income, revenue and profit from the trust estate to the Trustor for and during her natural life, and upon her death *(together with any accrued, accumulated income)* to HORACE O. CAMM, son of the Trustor, for and during his

natural life·. . .'' with remainders over to other persons after the son's death. (Emphasis added.)

The court further found that at the time of the trustor's death the "accumulated and accrued income" from the trust estate included $1,052.67 in The San Francisco Bank, $502 in the Sonoma County Branch of the Bank of America, and $554.12 in the Wells Fargo Bank and Union Trust Company; that in July, 1942, the money in those three accounts was paid to appellant, and that such funds "were subject to and chargeable with all of the debts of said decedent at the time of her death.''

For the foregoing reasons, the court further found that there were still sufficient funds in the estate to pay respondent's claim, and that the administrator's first and final report and account did not show all of the monies with which he was actually charged—to wit, the sum of $2,108.79, as before shown.

The court then concluded that the first and final report and account could be allowed and approved, and administration terminated upon appellant's paying to respondent the amount of his claim, and an order to that effect was made.

In a memorandum opinion the trial court rejected the contention of the appellant administrator that the accrued, accumulated income in the book accounts before noted, vested in him as remainderman at his mother's death, free from claims of such life beneficiary's creditors. In his opinion the trial judge stated : ''I am satisfied that the rule that a person cannot place his property or the income thereof beyond the reach of his creditors so long as he himself retains the right to receive and use it is applicable in this case. . . . The defense that at the moment of death the money in the income accounts of the deceased vested in Horace O. Camm, as a remainderman, under the terms of the amended trust instruments, cannot be sustained. Equity treats the trust as void insofar as it operates to defeat creditor's claims. Hence, to the extent necessary to pay such claims, the money must be treated as that of the decedent at death and as having passed into her estate for purposes of administration for the benefit of creditors who would otherwise be deprived of their just dues. If this trust as to the accrued and accumulated income to which the settlor was entitled before death could be upheld as against this creditor's claim, it would be possible for anyone to create a trust for his own benefit, in which he retained the right to re-

ceive and use all income during his life, with remainder to another at the moment of death, free from claims of creditors, and then keep large credit accounts running and die leaving his debts unpaid, thus cheating his creditors. Equity will not permit this. Authorities relied upon by the objector fully support his position.''

Appellant contends that he took such accrued, accumulated income absolutely in remainder, under the terms of the trust agreement, and that the estate of his mother had no right thereto. Appellant states: ''Reducing the argument to the simplest terms, the percentage of zero is zero. Since the Estate could not claim any interest in any portion of this fund, it follows that a creditor of the Estate likewise cannot do so.'' He then cites a number of authorities in support of the undoubted and well established rule of law that a creditor of a trust beneficiary has no better claim to the trust fund than the beneficiary has.

Certainly, if the estate of Catherine V. Camm had no right to said funds, the respondent as a creditor would have none. However, the trial court found that the money in said income accounts became a part of Catherine Camm's estate upon her death and was subject to the claims of creditors, and the question that we must decide upon this appeal is whether or not this determination of the trial court was correct.

Appellant relies upon *Greenwich Trust Co.* v. *Tyson*, 129 Conn. 211 [27 A.2d 166], as his case most closely in point. There a grantor had created a ''discretionary trust'' with the income payable to the grantor at the discretion of the trustee and also giving the trustee discretion to accumulate any part thereof, or to expend any part thereof directly for the support of the grantor or of his wife and children. The trust instrument created a remainder by way of trust with income to be paid to the grantor's widow. An action was brought by a creditor to subject income and principal to the payment of his claim. The trial court held that the half of the corpus of the trust, which, under its provisions, had already vested in the grantor beneficiary, was subject to the creditor's claim; that the creditor also had the right to reach so much of the income as the trustee in his discretion did not deem to be required for the support of the wife and children of the grantor; but that the creditor had no right to the remaining half of the corpus which had not yet vested in the grantor. Pending the determination of the appeal the grantor-beneficiary died and

his executor was substituted as a party, and as stated in the opinion. ''He [the executor] and the other parties have stipulated that there is in the possession of the trustee some undistributed income from the fund, and further that this court may proceed to decide all the issues presented on the record and in so doing may take cognizance of the fact of Tyson's [grantor's] death to any extent to which it affects those issues.'' The Supreme Court of Errors of Connecticut affirmed the judgment of the trial court in all respects except that it held that the trial court erred in holding that the creditor was limited to so much only of the income as the trustee in his discretion deemed not required for the support or education of the grantor's wife and children.

Appellant quotes the following language from pages 173-4 [27 A.2d] of the case: ''When Tyson died, the contingencies which might defeat the remainder interests could no longer happen, and those interests then became indefeasibly vested. *Bates* v. *Spooner,* 75 Conn. 501, 508, 54 A. 305; *Thomas* v. *Castle,* 76 Conn. 447, 451, 56 A. 854; *Daskam* v. *Lockwood,* 103 Conn. 54, 64, 130 A. 92. While we have found few cases dealing with a situation where the settlor of the trust, after reserving to himself the income for life, creates vested indefeasible interests, to take effect at his death, we have found none which subjects such interests to the demands of the settlor's creditors, and on principle there is no question that the creditors cannot reach those interests. Over them the settlor has no dominion, and his creditors have no more right to reach them than they would any interests in property formerly owned by him which has passed into the ownership of another. *Bryan* v. *Knickerbacker, supra,* 1 Barb. Ch., N. Y., 425; Griswold, op. cit., Sec. 475; 1 Perry, Trusts, 7th Ed., p. 654.''

However, the quotation is merely to the effect that the remaining half of the corpus of the trust created by the decedent trustor passed upon his death to the remainderman named therein free from the claims of the creditors of the decedent trustor who was also the original life beneficiary. This is, of course, in accordance with well settled principles concerning which there is no dispute in this case, as the corpus of the trust is not here involved. But appellant has apparently overlooked the main holding of the Tyson case which is that certain income of the trust which had accrued prior to the grantor-beneficiary's death was liable for his debts even though payments of income to the decedent were *discretionary* with the trustee.

For the court said at pages 172, 173 [27 A.2d] : "The trust before us is not a spendthrift trust but, by reason of the discretion reposed in the trustee as to the use of the income, it is a 'discretionary' trust. If in such a trust the settlor is the sole person entitled to the income, that income can be reached by his creditors. Griswold, op. cit., 481; Restatement, 1 Trusts, sec. 156(2). A provision in the trust instrument that the trustee might in his discretion withhold the income from the settlor and accumulate it would not in itself place the income beyond the reach of his creditors. *Petty* v. *Moores Brook Sanitarium,* 110 Va. 815, 817, 67 S. E. 355, 27 L. R. A., N. S., 800, 19 Ann. Cas. 271, and see *Warner* v. *Rice,* 66 Md. 436, 443, 8 A. 84. . . .

"The outstanding factor in the situation is that, under a trust where the trustee has absolute discretion to pay the income or expend it for the settlor's benefit, the trustee could, even though he had a like discretion to expend it for others, still pay it all to the settlor. Such a trust opens the way to the evasion by the settlor of his just debts, although he may still have the full enjoyment of the income from his property. To subject it to the claims of the settlor's creditors does not deprive others to whom the trustee might pay the income of anything to which they are entitled of right; they could not compel the trustee to use any of the income for them. The public policy which subjects to the demands of a settlor's creditors the income of a trust which the trustee in his discretion may pay to the settlor applies no less to a case where the trustee might in his discretion pay or use the income for others. The trial court was correct in holding that the plaintiff was entitled to reach the income if necessary to satisfy its judgment, but was in error in holding that its rights were limited to so much only of that income as the trustee in his discretion deemed not to be required for the support, maintenance or education of the settlor's wife and children."

We believe that the Tyson case, properly analyzed and considered, supports the order of the trial court in the instant case and does not support the contention of appellant.

In an annotation in 141 American Law Reports at page 1469 it is stated: "Another type of provision casting doubt on the testator's intent is a direction in the trust instrument to pay over, upon the life beneficiary's death, any accrued or accumulated income to subsequent beneficiaries. Most cases seem to hold that such a provision, without more, does not evince

an intention on the part of the creator of the trust that income available for distribution, but not paid, to the life beneficiary, should be denied to his estate."

In *In re Dexter's Estate,* 134 Misc. 195 [235 N. Y. S. 763], the court said at pages 764, 765: [235 N.Y.S.]: "Paragraph 8 of the will gives all of the residuary estate to the executors 'in trust to receive the rents, income and profits thereof and to pay over the same to my sister, Julia Pinkney, so long as she shall live and upon her death I give, devise and bequeath the principal of my residuary estate and any accrued income thereon which has not been paid over to my sister, Julia Pinkney, to Louise Ewing Dexter.' . . .

"This leaves but one question to be determined, namely, whether the testatrix intended, by the direction to pay to the remainderman 'any accrued income,' that all of the income received by the executors from the date of her death to the date of the death of the life tenant, and not paid to the latter during her lifetime, should be paid over to the remainderman, instead of to the estate of the life beneficiary. I hold that the testatrix intended payment of such income to the life tenant. . . .

"The rule above stated which governs payment of *income from trust estates,* and not the rule governing outright gifts, must, therefore, be applied. The words 'accrued income' in this will must be construed, as they are commonly used, to mean income for the current period which was earned upon investments, but which was not yet payable to the executors or trustees at the time of the termination of the trust."

In the case of *Horlick* v. *Sidley,* 241 Wis. 81 [3 N.W.2d 710], the remainderman of a trust sought without success to prevent the net income which had accumulated, but which had not been paid over by the life tenant from being paid to the executors of the estates of the life tenants, relying upon a provision in the trust that in the event of the death of the beneficiary before the termination of the trust the share of any such beneficiary was to be transferred to his or her lawful issue. The court said at pages 712-3 [3 N.W.2d]: "The reasons opposing appellant's claim are clearly stated by the New Jersey court in the Spiegelberg case, supra, in the following language at pages 174, 175 of 117 N. J. Eq., at page 166 of 175 A.:

" 'By the first paragraph of the trust indenture, supra, the net income of the trust for and during the life of the settlor's

wife was given to her, absolutely and unqualifiedly, and its payment to her specifically enjoined upon the trustees. That income was set aside as and became her absolute property. She could not legally be deprived of any part of it by and [sic] act, design, or default on the part of the trustees. Nor could the trustees, by merely neglecting or refusing to pay it to her in the manner directed by the settlor, convert all or any part of it into corpus or accumulations thereon, payable, upon her death, to the remaindermen under the trust.

" 'To hold otherwise, and as contended for by the remaindermen, that income accrued, but not actually paid over, during the life of the life tenant reverted upon her death to the remaindermen as accumulations on corpus, would necessitate a construction whereby this outright gift to the settlor's wife would be qualified so as to include not that which he had specifically directed the trustees to pay her, but only that which they saw fit to actually pay her, during her lifetime. . . .

" 'The inevitable result and effect of any such construction would be to enable the trustees by their mere withholding, intentionally or otherwise, payment of all or any part of the net income until after the life beneficiary's death to thereby not only deprive the latter of that which the creator of the trust intended and specifically directed should absolutely be hers, but to even frustrate and defeat his very intent. A construction so harsh and casting such grave doubts upon the stability and security of trust settlements, and incidentally upon the settlor's power to dispose, as he sees fit, of that which is his own, should not, and will not, be adopted unless the language and tenure of the trust indenture admits of no other.'

"Granting that the interest of William H. Sidley is an executory interest operating to defeat the prior vested interest in the principal of the trust, it does not necessarily follow that it likewise operates to defeat such interest in the collected or accrued income. What distinguishes, for the purposes of appellant's argument, such income and income previously paid to the primary beneficiaries? The interest in the accrued and the collected income is a fully vested interest whatever may be the nature of the title to the principal and to the subsequently accruing income, and this vested interest is not subject to any defeasance."

Under the decisions hereinbefore cited we believe that the most reasonable interpretation of the trust instrument here

involved is that the grantor-beneficiary did not intend by the use of the words "accrued, accumulated income" to deprive her creditors of any portion of the income of the trust which she up to the instant of her death had a right to demand. Such a construction is not compelled by the instrument itself, taking it in its entirety, and if we should give it such a construction we would certainly have to impute to the deceased the ignoble purpose and desire to make the income of the trust available to her during her lifetime and yet have the unused portion of that income, which she had permitted to remain in the hands of the trustee, free from the just claims of her creditors.

But, if, as so vigorously contended by appellant, the only proper construction of the trust instrument is that it was the intention of the trustor to have the portion of the income of the trust which through failure of the trustee to pay said income to the trustor as directed by the trust instrument, remained in the hands of the trustee at the date of the death of the grantor-beneficiary, pass immediately to the remainderman free from any claims of the trustor-beneficiary's creditors, then we believe that, as stated by the learned trial judge in his opinion, "Equity treats the trust as void insofar as it operates to defeat creditors' claims." ". . . the rule that a person cannot place his property or the income thereof beyond the reach of, his creditors so long as he himself retains the right to receive and use it is applicable to this case."

For as was said in *McColgan* v. *Magee, Inc.*, 172 Cal. 182, at page 186 [155 P. 995, Ann.Cas. 1917D 1050] : "For this reason, and upon grounds of public policy, it is further held that one cannot by any disposition of his own property put the same or the income thereof beyond the reach of his creditors, so long as he himself retains the right to receive and use it."

Furthermore the effect of the construction contended for by appellant would be to render the estate of decedent trustor insolvent upon her death, and there is substantial merit in the argument of respondent that it would be a fraudulent transfer under section 3439.04 of the Civil Code which provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." (See, also, *Scholle* v. *Finnell*, 166 Cal. 546 [137 P. 241].)

In view of the foregoing we believe that the order of the trial court disallowing the account of appellant administrator and ordering him to account as administrator for the funds in said income accounts and pay the claim of respondent, should be, and the same is hereby affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 14, 1946.