DON GASTINEAU EQUITY TRUST, Plaintiff,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Counterclaimant,

v.

DON GASTINEAU EQUITY TRUST; Don Gastineau; Charl Ann Gastineau; and California Savings and Loan Association, Defendants on Counterclaim.

No. CV 85–7587–RG(Px).

United States District Court, C.D. California.

Dec. 17, 1987.

Robert C. Bonner, U.S. Atty., Charles H. Magnuson, Asst. U.S. Atty., Chief, Tax Div., Jeffrey G. Varga, Asst. U.S. Atty., Los Angeles, Cal., for U.S.

Harvey Richelson, Thousand Oaks, Cal., for plaintiff and defendants on counterclaim.

## ORDER FOR JUDGMENT AND JUDGMENT

GADBOIS, District Judge.

The United States of America's Motion for Summary Judgment came on for hearing before the Court on November 2, 1987, the Honorable Richard A. Gadbois, Jr., United States District Judge, presiding. Plaintiff and counterclaim defendant Don Gastineau Equity Trust and counterclaim defendants Don Gastineau and Charl Ann Gastineau were represented by Harvey Richelson, Esq. Defendant and counterclaimant United States of America was represented by Robert C. Bonner, United States Attorney for the Central District of California, Charles H. Magnuson, Assistant United States Attorney, Chief, Tax Division, and Jeffrey G. Varga, Assistant United States Attorney, with an appearance by Assistant United States Attorney Jeffrey G. Varga. The Court, having carefully considered the United States' moving papers, the exhibits attached thereto to and the cited portions of the deposition transcripts, the opposition and reply papers, and all other matters properly a part of the record, hereby orders that judgment be entered in favor of the United States. This Order for Judgment is based on the following uncontroverted facts appearing in the record and on the following conclusions of law.

## UNCONTROVERTED FACTS

1. Plaintiff Don Gastineau Equity Trust instituted a wrongful levy suit against the United States. Plaintiff contends that the United States wrongfully levied upon the real property located at 1025 Mesa Drive, Camarillo, California ("real property at issue") to satisfy the unpaid Federal income tax liabilities of Don Gastineau and Charl Ann Gastineau. Plaintiff maintains that it is the legal owner of the real property at issue, not the Gastineaus. Thus, it prays that all Federal tax liens and levies upon the real property at issue be removed.

2. The United States answered the complaint and brought a counterclaim against Don Gastineau Equity Trust. The United States joined in the counterclaim Don Gastineau, Charl Ann Gastineau and California Federal Savings and Loan Association ("Cal.Fed.").[1] The government contends that Don Gastineau Equity Trust is a sham. The United States maintains that Don Gastineau Equity Trust was formed and/or is being used by Don and Charl Ann Gastineau as a device to thwart the collection of the unpaid income tax liabilities in question. Thus, the government seeks to reduce to judgment these unpaid Federal income tax liabilities, asks the Court to find that the United States has valid and subsisting tax liens upon the real property at issue, requests the Court to find that Don Gastineau Equity Trust is a sham to be disregarded, and asks that the purported conveyance be set aside and the real property at issue be sold to satisfy Don and Charl Ann Gastineau's unpaid Federal income tax obligations.

3. The real property at issue in this action is Don and Charl Ann Gastineau's residence, located at 1025 Mesa Drive, Camarillo, California. *Don Gastineau Depo.*, pgs. 3 and 108 (lines 15–22); *Charl Ann Gastineau Depo.*, Vol. I, pgs. 3–4 (and correction thereto) and pg. 57 (lines 14–21). It was purchased by the Gastineaus in 1972. *Pre–Trial Conference Order* (hereafter "P/T Order"), para. 5a. Cal.Fed. recorded a Deed of Trust on April 20, 1972, to secure payment of a $33,200.00 note. *P/T Order*, para. 5b.

4. Sometime in early 1976, Don Gastineau decided to create the Don Gastineau Equity Trust. *Don Gastineau Depo.*, pg. 6, (lines 17–21). For about $2,000.00 to $3,000.00 he subscribed to a course offered by, and purchased materials and step-by-step instructions from, the Institute of Individual Religious Studies. *Don Gastineau Depo.*, pg. 7 (lines 4–15); pg. 18 (lines 23–24); pg. 20 (lines 24–25); pgs. 21–23; *Charl Ann Gastineau Depo.*, Vol. II, pgs. 41–42. *See also Summary Judgment Motion Exhibits* 1–18. The course, the materials and the kit were designed to enable Mr. Gastineau to create and maintain a purported family trust. *Don Gastineau Depo.*, pg. 21 (lines 1–5). In addition to written materials, the Institute of Individual Religious Studies provided Mr. Gastineau with an instructor who assisted in the formation of Don Gastineau Equity Trust. *Don Gastineau Depo.*, pgs. 21–23.

5. On May 1, 1976, Don Gastineau purportedly created Don Gastineau Equity Trust. *Summary Judgment Motion Exhibits* 1 and 2. Don was both the creator and trustor. *Id.* The trustees were Charl Ann Gastineau and Vera Morris. Charl Ann is Don's wife; Vera Morris is Charl Ann's mother. *Charl Ann Gastineau Depo.*, Vol. I, pg. 8 (lines 22–23); pg. 29 (lines 21–24). The next day, May 2, 1976, Don Gastineau was appointed trustee for life. *Summary Judgment Motion Exhibit* 3. Indeed, on May 2, 1976, Don and Charl Ann were both appointed executive trustees of Don Gastineau Equity Trust; (*Don Gastineau Depo.*, pgs. 63–64 and 111–112); Don was appointed "The Executive Trustee" while Charl Ann was appointed Executive Secretary. *Summary Judgment Motion Exhibit* 3. Don Gastineau, Charl Ann Gastineau and Vera Morris continue to be the named trustees.

---

**1.** By stipulation and order thereon, entered April 28, 1987, the United States and Cal.Fed. agreed that Cal.Fed.'s deed of trust constitutes a lien superior to the tax liens of the United States upon the real property at issue. The United States agreed that any judgment it obtains in this matter will be consistent with this stipulation.

6. A Declaration of Trust was prepared and executed on May 1, 1976. *Summary Judgment Motion Exhibit* 1. The purpose of Don Gastineau Equity Trust, as described in the Declaration of Trust, at page 5, is:

THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND TRUSTOR HERETO to be the corpus of THIS TRUST, so that Don Gastineau can maximize his lifetime efforts through the utilization of his Constitutional rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Don Gastineau feels he will achieve because his RELIGIOUS BELIEFS are sustained by this Trust.
To wit:

\* \* \* \* \* \*

That his Ethical Guide is to conduct *every exchange* [original emphasis] in the lucid light[1] of voluntarism,[3] devoid infringement and coercion, individually or collectively (as with government and *taxation* [emphasis added])[4]

\* \* \* \* \* \*

7. The Declaration of Trust gives the trustees "exclusive management and control of The Trust property and business affairs; ..." *Summary Judgment Motion Exhibit* 1, pg. 2. The declaration provides that a majority of the trustees (*i.e.*, 2 of 3) shall constitute a quorum for doing business. *Id.*, pg. 3.

8. The Declaration of Trust confers unlimited powers upon the trustees. "Trustees may do anything any individual may legally do in any state or county, subject to the restrictions herein noted." *Summary Judgment Motion Exhibit* 1, pg. 3. But there are no restrictions on the powers of the trustees. The Declaration of Trust simply provides that "[a] Minute of Resolutions of The Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power." *Id.*

9. With respect to beneficial interests, the Declaration of Trust simply provides that the "Beneficial Interests" in Don Gastineau Equity Trust are divided into 100 units. *Summary Judgment Motion Exhibit* 1, pg. 6. The owner of a beneficial unit is entitled to a pro rata share of any distribution of income from Don Gastineau Equity Trust and to a pro rata share of the corpus upon liquidation. *Id.* However, the owner of a beneficial unit interest is not entitled to participate in the management of Don Gastineau Equity Trust. *Id.*

10. The Declaration of Trust states Don Gastineau Equity Trust is to be liquidated in 25 years or sooner if the trustees unanimously determine upon an earlier date to liquidate "because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve trust assets, ..." *Summary Judgment Motion Exhibit* 1, pg. 7.

11. The corpus of Don Gastineau Equity Trust was established through a series of conveyances. On May 1, 1976, Charl Ann Gastineau purportedly quitclaimed to Don Gastineau her interest in the real property at issue. *Summary Judgment Motion Exhibit* 19. She also purportedly conveyed to Don Gastineau her interest in the family's furnishings and intangible assets, her interest in the real property at issue and her interest in another parcel of real property. *Summary Judgment Motion Exhibit* 20. In return she received $10.00 and a document entitled "Receipt for Property Held in Trust." *Summary Judgment Motion Exhibit* 21; *Don Gastineau Depo.*, pg. 42 (lines 12–13).

12. The very next day, May 2, 1976, Don Gastineau purportedly quitclaimed the real property at issue to "Charl Ann Gastineau, Trustee, and Vera Morris, Trustee, for the Don Gastineau Equity Trust." *Summary Judgment Motion Exhibit* 22. Also, the family furnishings and intangible assets were purportedly conveyed to Don Gastineau Equity Trust. *Summary Judgment Motion Exhibit* 23. The family automobiles were leased to Don Gastineau Eq-

uity Trust. *Charl Ann Gastineau Depo.*, Vol. I, pgs. 74–75.

13. In exchange for the purported conveyances, Don Gastineau received the 100 Units of Beneficial Interest in Don Gastineau Equity Trust. *Summary Judgment Motion Exhibit* 3. Immediately thereafter, Dons's 100 units of beneficial interest were redistributed: 50 units were distributed to Don, and 50 units were distributed to Charl Ann. *Id.* [2]

14. Although the property had purportedly been transferred to the trust, the Gastineaus continue to use and enjoy the property in the same manner as before the purported conveyance. *See Charl Ann Gastineau Depo.*, Vol. I, pg. 17 (lines 14–25). In fact, starting in 1979, after the Internal Revenue Service disallowed the Gastineaus' reallocation of their 1976, 1977 and 1978 income to Don Gastineau Equity Trust (*see* paragraph 16, *infra*), the Gastineaus paid property taxes, telephone bills, monthly mortgage payments and similar bills with respect to the real property at issue. *Charl Ann Gastineau Depo.*, Vol. I, pg. 101 (lines 18–20), pgs. 105–106; Vol. II, pg. 10 (lines 12–21); *Don Gastineau Depo.*, pgs. 93–94. Significantly, the Gastineaus did not advise Cal.Fed. that title to the real property at issue was purportedly transferred to Don Gastineau Equity Trust since Mr. Gastineau was of the opinion that he and his wife remained committed to pay the mortgage. *Don Gastineau Depo.*, pg. 97 (lines 4–12); pgs. 119–20.

15. Of perhaps greater significance, Don and Charl Ann Gastineau deducted property tax and home mortgage interest payments made with respect to the real property at issue on their 1979 through 1986 tax returns. *P/T Order*, para. 5v. Moreover, the Gastineaus never paid any rent to Don Gastineau Equity Trust for the use of the real property at issue. *Don Gastineau Depo.*, pgs. 119–120; *Charl Ann Gastineau Depo.*, Vol. II, pgs. 30–31. In short, the Gastineaus retained the complete, unrestricted beneficial use of the real property at issue while shielding it from the reach of the Internal Revenue Service.

16. The tax liabilities at issue concern the Gastineaus' 1976, 1977 and 1978 tax years. Specifically, on their 1976, 1977 and 1978 U.S. Individual Income Tax Returns, the Gastineaus' reallocated their personal income to Don Gastineau Equity Trust. The Internal Revenue Service disallowed these readjustments. Based on the disallowances, on December 17, 1979, the Service entered an income tax deficiency assessment against the Gastineaus with respect to 1976 and on October 10, 1983, with respect to 1977 and 1978. The amounts assessed were $2,844.00 for 1976 (*P/T Order*, para. 5i), $3,479.00 for 1977 (*P/T Order*, para. 5l) and $4,371.00 for 1978 (*P/T Order*, para. 5l). The total amount due with respect to these three assessments as of November 2, 1987, was $22,942.36.

17. Notices and demands for payment of these tax assessments were given to Don and Charl Ann Gastineau. *P/T Order*, paras. 5i and 5l. As a result of the Gastineaus' failure to fully pay these assessments, tax liens arose in favor of the United States on all property and rights to property belonging to the Gastineaus. 26 U.S.C. §§ 6321 and 6322. Thereafter, notices of these tax liens were recorded with the Ventura County Recorder's Office. *P/T Order*, paras. 5m and 5n; *Summary Judgment Motion Exhibits* 24 and 25. To satisfy these unpaid liabilities, the Internal Revenue Service levied and seized the real property at issue. This suit followed.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action.

2. The Gastineaus do not dispute the correctness of the 1976, 1977 and 1978 income tax assessments, subject to certain mathematical adjustments. The United States contends that the total amount due

---

**2.** The Units of Beneficial Interest were further redistributed. They are now held as follows:

| | |
|---|---|
| Charl Ann Gastineau | : 50 Units |
| Don Gastineau | : 30 Units |
| Vera Morris (Charl Ann's mother) | : 10 Units |
| Artie Gastineau (Don's mother) | : 10 Units |

*Summary Judgment Motion Exhibits* 4 and 10.

with respect to these three assessments as of November 2, 1987, was $22,942.36. The Gastineaus have not presented any evidence to persuade the Court that this amount was incorrectly computed. Thus, judgment will be entered against the Gastineaus and in favor of the United States for this amount, plus interest thereon as provided by law.

3. Both plaintiff's wrongful levy suit and the United States' counterclaim will turn on the same factual and legal question: Does the property purportedly transferred to Don Gastineau Equity Trust "belong to" the Gastineaus for purposes of the Federal tax lien statutes.

4. Section 6321 of Title 26, United States Code, provides that if any person liable to pay any tax neglects or refuses to pay the tax after demand, the amount of the tax (plus interest, penalties and other statutory additions) shall be a lien in favor of the United States upon all property and rights to property "belonging to" such person. The United States made timely demands upon the Gastineaus for payment of the 1976, 1977 and 1978 deficiency tax assessments. The Gastineaus neglected or refused to fully pay these amounts. Accordingly, Federal tax liens arose upon all property and rights to property belonging to the Gastineaus. Notices of these tax liens were duly recorded with the Ventura County Recorder's Office.

5. Section 6331(a) of Title 26, United States Code, provides that any person liable to pay any tax neglects or refuses to pay the tax within 10 days after notice and demand, the United States may collect such tax by levy upon all property and rights to property belonging to the delinquent taxpayer or upon which there is a Federal tax lien. The evidence supporting the motion, the facts agreed upon in the Pre–Trial Conference Order, and the case law establish that the real property at issue "belongs to" the Gastineaus for purposes of Sections 6321 and 6331(a), *supra*.

6. The Ninth Circuit has examined two trusts nearly identical to the purported trust *sub judice*. Indeed, in both Ninth Circuit cases, like in the instant case, the trusts were set up through the use of forms, materials and step-by-step instructions bought from the Institute of Individual Religious Studies. The controlling terms of the trusts were virtually identical to those of Don Gastineau Equity Trust. In each instance the Ninth Circuit held that the transfer of title of assets to a trust while the individual taxpayers retained their use and enjoyment was a sham transaction, without economic substance, that will not be recognized for tax purposes. *Neely v. United States*, 775 F.2d 1092 (9th Cir.1985); *Hanson v. Commissioner*, 696 F.2d 1232 (9th Cir.1983). *See also Schulz v. Commissioner*, 686 F.2d 490 (7th Cir. 1982); *Vnuk v. Commissioner of Internal Revenue*, 621 F.2d 1318 (8th Cir.1980). Although these cases involved the question whether income earned by the taxpayers could be allocated to the family trusts and whether the trusts ran afoul of the grantor trust provisions of 26 U.S.C. §§ 671–678, their holdings apply with equal force to establish that Don Gastineau Equity Trust was a sham for purposes of the Federal tax lien statutes and cannot be used to shield the Gastineaus' residence from tax liens and levy.

7. Courts addressing the precise issue presented here—whether federal tax liens reach property placed in trusts similar to the trust *sub judice*—have concluded that it does. *E.g., Lewis G. Allen Family Trust v. United States*, 558 F.Supp. 152 (D.Kan.1982); *Kokaubeam v. United States*, C–83–0651J (D.Utah 1984) (unpublished memorandum opinion). These courts held that where the trustees had the power to use and dispose of the trust's property as if they owned it, the trust was a sham without legal significance and should be disregarded. Indeed, the factual recitation in *Lewis G. Allen Family Trust v. United States, supra*, demonstrates that the purported trust involved in that case was virtually identical to the purported trust at issue in the instant case.

8. While Don Gastineau Equity Trust may have some attributes of a trust under California law, for purposes of the Federal lien statutes Don Gastineau Equity Trust is

a sham which must be disregarded. The Gastineaus, who were the executive trustees, could use the real property at issue as they willed. Although Vera Morris, Mrs. Gastineau's mother, was also a trustee, all decisions concerning Don Gastineau Equity Trust (except the decision to dissolve) could be made by a majority vote (*i.e.*, Mr. and Mrs. Gastineau). *See Neely v. United States, supra*, at 1095 (trust found to be a sham where a simple majority of the trustees were empowered to distribute trust income, even though a third person was also a trustee).

9. In short, the Gastineaus reside at the real property at issue; they pay the property tax bills, the mortgage and the home insurance; they deduct the property tax and mortgage payments on their personal income tax return; and they use and enjoy their home precisely in the same manner as before the purported transfer. "[A] person cannot place his property ... beyond the reach of his creditors so long as he himself retains the right to ... use it...." *In re Camm's Estate*, 76 Cal.App.2d 104, 172 P.2d 547, 551 (1946). Equity treats such trusts as void. *Id.*

10. Accordingly, IT IS ORDERED that judgment will be entered in favor of the United States with respect to both plaintiff's action against the government and the United States' counterclaim.

### JUDGMENT

IT IS ORDERED, ADJUDGED and DECREED that:

1. Plaintiff Don Gastineau Equity Trust shall take nothing and its action is dismissed on the merits.

2. Defendant and counterclaimant United States of America shall have a judgment against defendants on counterclaim Don Gastineau and Charl Ann Gastineau in the amount of $22,942.36, plus interest thereon as provided by law, together with its costs of action, and counterclaimant United States of America shall recover from defendants on counterclaim Don Gastineau and Charl Ann Gastineau the amount of $22,942.36, plus interest thereon as provided by law, together with its costs of action.

3. The purported conveyance of the real property located at 1025 Mesa Drive, in the City of Camarillo, in the County of Ventura, State of California and described in the county records as:

Lot 21, of Tract 1248, in the County of Ventura, State of California, according to the map thereof recorded in book 29, pages 92 and 93 of Miscellaneous Records, in the office of the County Recorder of said county.

from defendant on counterclaim Don Gastineau to plaintiff and defendant on counterclaim Don Gastineau Equity Trust is set aside as null and void.

4. The United States of America has valid and existing Federal tax liens against all property and rights to property belonging to defendants on counterclaim Don Gastineau and Charl Ann Gastineau, including against the real property described in paragraph 3, *supra.*

5. The Federal tax liens of the United States of America described in paragraph 4, *supra*, are hereby foreclosed against the real property described in paragraph 3, *supra*, and the said real property in its entirety is ordered sold. However, the said real property shall not be sold, nor shall the United States Marshal take any steps set forth below with respect to the sale of the said real property, until 60 days have elapsed after the entry of this Order for Judgment and Judgment.

6. Any person authorized to do so by 28 U.S.C. § 2001(b) may move the Court for an order for a private sale of the real property described in paragraph 3, *supra*, pursuant to the terms and conditions set forth in § 2001(b). Any such motion shall be served and filed within twenty (20) days of the date of entry of this judgment and shall set forth with particularity (a) the nature of the moving party's interest in the said real property, if any; (b) the reasons why the moving party believes that a private sale would be in the best interests of the United States of America and the other creditors involved herein; (c) the names of three proposed appraisers and a short statement of their qualifications; and (d) a

proposed form of order stating the terms and conditions of the private sale. Any such motion shall comply with the Local Rules of the District Court for the Central District of California.

7. In the event the real property described in paragraph 3, *supra,* does not become the subject of a motion described in the preceding paragraph, or if such a motion is made but thereafter denied by the Court, within 30 days after the time for making the motion described in the preceding paragraph has expired, or if such motion is made but denied by the Court within 30 days after the filing of the order denying the said motion the United States Marshal for the Central District of California is hereby authorized and ordered under 28 U.S.C. §§ 2001 and 2002 to offer for sale at public auction and to sell the real property described in paragraph 3, *supra,* with all improvements, buildings and appurtenances thereunto pertaining. The terms and conditions of the sale shall be as follows:

a. The public auction referred to in paragraph 7, *supra,* shall be held either on the premises itself or at any other place in accordance with the provisions of 28 U.S.C. § 2001, the time thereunder to be announced by the United States Marshal after being advertised once each week for four consecutive weeks preceding the date fixed for the sale in a regularly issued newspaper of general circulation in Ventura County, California;

b. The real property described in paragraph 3, *supra,* shall be sold free and clear of all liens or other claims by any party to this proceeding. However, in the event the note of defendant on counterclaim California Federal Savings and Loan Association set forth in paragraph 7hl, *infra,* is not fully satisfied from the proceeds of the sale of the real property described in paragraph 3, *supra,* after distribution of the said proceeds in the manner set forth in paragraph 7(h), *infra,* the said real property shall be sold subject to the said deed of trust to the extent the said note and deed of trust remain unsatisfied;

c. Any party to this action may be a purchaser of the real property at said sale;

d. A minimum bid of $65,000 is set on the real property described in paragraph 3, *supra.* If that minimum bid is not met, the United States Marshal, under the conditions set forth in paragraphs 7a and 7b, *supra,* shall arrange for a new public sale with appropriate alteration in the minimum bid;

e. The successful bidder (hereafter "purchaser") shall be required to deposit with the United States Marshal a minimum of twenty (20%) percent of the amount of his bid by certified check, cashier's check, or cash deposit immediately upon the real property described in paragraph 3, *supra,* being struck off and awarded to him as the highest and best bidder; and the remaining eighty (80%) percent of said purchase price to be paid by certified check, cashier's check, or cash within thirty (30) days of the date of sale. Should any person bid off the said real property at sale by virtue of this Judgment and fail to comply with the terms of the sale, he shall be liable to the United States for twenty (20%) percent on the value of the said real property thus bid off as a penalty, and said deposit by the purchaser shall be paid over and delivered to the United States to be applied toward payment of said penalty, but payment of said penalty by the purchaser shall not be a credit on the judgment of the United States against defendants on counterclaim Don Gastineau and Charl Ann Gastineau. Further, in the event that the purchaser fails to fulfill the terms of the sale, the said real property shall be reoffered for sale in accordance with the terms and conditions set forth in this Judgment;

f. Upon the sale of the real property described in paragraph 3, *supra,* and the purchaser's compliance with the terms and conditions set forth in paragraph 7e, *supra,* the United States Marshal shall prepare and file with this Court an accounting and report of sale and shall give to the purchaser a Certificate of Sale containing the description of the proper-

ty sold and the price paid. The accounting and report of sale shall be filed within ten (10) days from date of sale. If no objections have been filed in writing in this cause with the Court within fifteen (15) days of the date of sale and of the purchaser's compliance with the terms and conditions set forth in paragraph 7e, *supra,* the sale shall be confirmed without necessity of motion, and the United States Marshal shall execute and deliver his Deed to said purchaser;

g. Possession of the real property described in paragraph 3, *supra,* shall be yielded to the purchaser upon the production of the Certificate of Sale and Deed; and if there is a refusal to so yield, a Writ of Assistance may, without further notice, be issued by the Clerk of this Court to compel delivery of the property sold to the purchaser;

h. The United States Marshal shall apply the proceeds of sale of the real property described in paragraph 3, *supra,* in the following order of priorities:

a. First, in satisfaction of the amount then still due on the promissory note (secured by a deed of trust) dated April 4, 1972, in the face amount of thirty-three thousand two hundred dollars ($33,200), held by defendant on counterclaim California Federal Savings and Loan Association, which promissory note is secured by a written deed of trust recorded on April 20, 1972 as Instrument No. 26451, in Book 3945, Page 899, of the official records of Ventura County, and which deed of trust constituted and constitutes a valid and subsisting lien upon the entire fee in the real property described in paragraph 3, *supra,* and which deed of trust secured and secures the due performance of the obligations of the aforesaid April 4, 1972 promissory note and the obligations of the said April 20, 1972 deed of trust;

b. Second, in satisfaction of the herein Judgment in favor of the United States of America (including its costs) against defendants on counterclaim Don Gastineau and Charl Ann Gasti-

neau, as described in paragraph 2, *supra;* and

i. If any surplus remains after making the aforesaid payments, the United States Marshal shall so report, and return and pay the same into the registry of this Court for distribution under further order of this Court; if the proceeds of said sale be insufficient to pay the amount due the United States of America after making the aforesaid distribution, it shall so appear from the United States Marshal's report of sale, and a further hearing in this case shall be had for the purpose of establishing the amount of a deficiency judgment, if any, to be entered in favor of the United States of America against defendants on counterclaim Don Gastineau and Charl Ann Gastineau.

8. During the pendency of the public sale described in paragraph 7, *supra,* the United States Marshal is authorized to have free access to the premises and to take all actions necessary to preserve the said real property described in paragraph 3, *supra,* until the Deed therefore is delivered to the successful purchaser of said property.

9. The Court hereby retains jurisdiction of this action for the purpose of making proper distribution of any surplus of the proceeds of sale, or of entering a deficiency judgment, whichever may be proper, pursuant to the United States Marshal's accounting and report of sale.